In the Interest of R.D., A Child.

No. 04–96–00364–CV.

Court of Appeals of Texas,
San Antonio.

Sept. 24, 1997.

Rehearing Overruled Oct. 16, 1997.

---

Tricia L. Hamil, Hamil & Hamil, P.L.L.C., Kerrville, for Appellant.

Scott F. Monroe, Kerrville, Johnnie Beth Page, Asst. Atty. Gen., Assistance Division, Austin, for Appellee.

Before STONE, GREEN and DUNCAN, JJ.

## OPINION

DUNCAN, Justice.

R.D.'s biological parents appeal the trial court's judgment terminating their parental rights. We affirm.

### THE APPELLATE RECORD

■ As a preliminary matter, we must explain the appellate record. In preparing to draft this opinion, we reviewed the transcript and found a trial court order sealing the entire trial court record. We were not previously aware of this sealing order because the district clerk filed an unsealed transcript, the court reporter filed an unsealed statement of facts, and the attorneys failed to bring the sealing order to our attention. We have thus been required to confront the appropriate means of drafting an opinion when the trial court's record is sealed. With no case law or rule to guide us, we have employed the procedure described below.

■ We first reviewed the appellate record to determine whether any court order unsealed the trial court's record. Finding none, we next attempted to determine whether any party voluntarily waived the right to have the record remained sealed pending this appeal. *See Fox v. Doe,* 869 S.W.2d 499, 506 (Tex.App.—San Antonio 1993, writ denied). So far as we have been able to determine, no party has waived the right to have the trial court's record remain sealed. But all parties have waived the right to have the record in this court sealed; no party has asked that we seal this court's record, and all parties have tendered and filed their briefs without a sealing requesting.

In light of these circumstances:

(1) We order the entire trial court record with the exception of the trial court's orders and judgments resealed. *See* Tex.R. Civ. P. 76a(1); Tex. Gov't Code Ann. § 552.022(12) (Vernon 1994) (orders, judgments, and opinions are public documents and may not be sealed).

(2) This opinion employs only the facts voluntarily disclosed by the parties in their briefs.

We also take this opportunity to remind trial court officials of their duty to maintain the confidentiality of sealed records unless and until they are released from that obligation by court order.

### FACTUAL BACKGROUND

When R.D. was born on May 15, 1993, she suffered from heroin withdrawal symptoms; consequently, the hospital immediately contacted the Texas Department of Protective and Regulatory Services. Within a couple of weeks, the Department filed this suit affecting the parent-child relationship. For R.D.'s protection, the Department also requested an emergency order naming the Department as R.D.'s temporary managing conservator. The trial court granted the requested emergency relief. Therefore, when R.D. was released from the hospital, the Department placed her in foster care where, with the exception of one visit to her parents' home, she remained until the time of trial.

For over two years after R.D.'s birth, the Department worked with her biological parents, Maria Josephine Ybarra and Rumaldo Dominguez, to enable them to assume R.D.'s custody and care. Ultimately, however, the Department asked the trial court to terminate their parental rights. But at the trial on the merits set for April 27, 1995, neither Ybarra nor Dominguez appeared. Apparently, both were afraid Ybarra would be arrested for probation violations if she appeared in court. In an effort to obtain R.D.'s biological parents' appearance, the trial court granted Ybarra immunity and reset the trial for May 11.

Following the May 11th trial, the trial court terminated Ybarra's and Dominguez's parental rights. However, the trial court also granted Ybarra's and Dominguez's oral motion for a new trial and gave them a

second opportunity to demonstrate they could properly parent R.D. by imposing in the new trial order twenty-eight requirements, terms, and conditions indicative of effective parenting. The order further provided the failure to meet each of these requirements, terms, and conditions would be considered prima facie evidence of a lack of qualifications to fulfill the parenting role.

The second trial on the merits was held on October 5. After hearing the evidence introduced at this trial, the trial court again terminated Ybarra's and Dominguez's parental rights. In support of its judgment, the trial court expressly found termination was in R.D.'s best interest, and the evidence satisfied two statutory grounds for termination. *See* Tex. Fam.Code Ann. §§ 161.001(1)(D), (E), 161.001(2) (Vernon 1996). Ybarra and Dominguez appealed.

### Termination of Parental Rights

In four points of error, Ybarra and Dominguez argue the evidence is legally and factually insufficient to support the trial court's findings supporting the termination of their parental rights. We hold there is legally and factually sufficient evidence supporting the trial court's subsection E finding, and only this finding is necessary to the judgment of termination. Accordingly, we do not discuss the subsection D finding. *See Flowers v. Texas Dep't of Human Resources, Tarrant County Welfare Unit*, 629 S.W.2d 891, 893 (Tex.App.—Fort Worth 1982, no writ).

#### *Grounds for Involuntary Termination*

■ To terminate parental rights, the evidence must establish (1) termination is in the child's best interest, and (2) one of the statutory grounds for termination. Tex. Fam.Code Ann. § 161.001 (Vernon 1996). In determining the child's best interest, the factfinder may consider the child's desires and current and future physical and emotional needs, as well as the current and future physical and emotional danger the child may confront. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex.1976). With respect to the party or parties seeking custody, the factfinder may consider their respective parenting abilities, the stability of the homes or other placement they propose, acts or omissions indicating an existing parent-child relationship is not a proper one, and any excuse for those acts or omissions. *Id.*

The statutory termination grounds alleged by the Department in this case focus on the child's emotional and physical well-being. The subsection D ground thus permits termination if a parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child," while the subsection E ground permits termination if a parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." Tex. Fam.Code Ann. § 161.001(1)(D), (E) (Vernon 1996).

Both subsections thus require "endangerment"—that is, jeopardizing the child's physical or emotional well-being. *Texas Dep't of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex.1987). But they differ as to the cause of the endangerment. *See In the Interest of S.H.A.*, 728 S.W.2d 73, 85 (Tex. App.—Dallas 1987, writ ref'd n.r.e.). We believe they also differ in two other respects—whether a "course of conduct" and direct relationship between the parental conduct and the cause of the endangerment are required.

■ On its face, subsection E permits termination if the party seeking termination proves parental conduct that itself causes endangerment, while subsection D permits termination if the party proves a parental act or omission caused a child to be placed or remain in an endangering environment. *See id.* Under both subsections, therefore, termination must rest upon parental conduct. But subsection D permits termination because of a single act or omission, while subsection E requires a "course of conduct." *See Smith v. Sims*, 801 S.W.2d 247, 250 (Tex.App.—Houston [14th Dist.] 1990, no writ).

■ Subsections D and E also differ in the relationship each requires between the parental conduct and the endangerment. Subsection D requires the endangerment to be

the direct result of the child's environment and only an indirect result of a parental act or omission; subsection E, on the other hand, requires the endangerment be a direct result of parental conduct. Subsection D thus permits a less than direct relationship between the parental conduct and the endangerment but it also requires an additional factor—an endangering environment—to be proved, while subsection E requires a direct relationship but this relationship, standing alone, justifies termination.

In any event, even under the subsection E standard, the endangering parental conduct need not be directed at the child specifically, it need not have caused an actual injury to the child, and it need not even constitute an "actual or concrete" threat of injury to the child. *Director of the Dallas Cty. Child Protective Serv. Unit of the Texas Dep't of Human Serv. v. Bowling*, 833 S.W.2d 730, 733 (Tex.App.—Dallas 1992, no writ). Instead, subsection E is satisfied simply by showing a parental course of conduct endangered the child's physical or emotional well-being. *Id.*

### Standards of Review

In the trial court, the child's best interest, as well as the statutory ground or grounds for termination, must be proved by clear and convincing evidence. Tex. Fam. Code Ann. § 101.007 (Vernon 1996); *In the Interest of G.M.*, 596 S.W.2d 846, 847 (Tex. 1980). Therefore, on appeal, a parent challenging the *factual* sufficiency of the evidence must demonstrate the evidence is insufficient to permit a rational factfinder to hold "'a firm belief or conviction'" as to the truth of the finding. *Id.* at 847 (quoting *State v. Addington* 588 S.W.2d 569 (Tex. 1979)). Legal sufficiency complaints, however, are reviewed under the same standard employed in other types of cases. Accordingly, to prevail on a *legal* sufficiency complaint, the appealing parent must demonstrate there is no more than a scintilla of evidence supporting the finding. *See generally* W. Wendell Hall, *Revisiting Standards of Review in Civil Appeals*, 24 St. Mary's L.J. 1041, 1133 (1993).

### Subsection E

In their second and third points of error, Ybarra and Dominguez attack the legal and factually sufficiency of the evidence to support the trial court's subsection E findings. They do so, however, with different evidentiary arguments. Under the second point of error, Ybarra argues there is no evidence other than her prenatal drug use to support the trial court's subsection E finding as to her, and she urges this court "to reject the recent trend finding prenatal drug use to be evidence of endangerment" under subsection E. Dominguez, on the other hand, argues the point more generally. The Department also attempts to draw this court into the prenatal-post-birth dichotomy, but it also insists the trial court's subsection E finding is amply supported by the evidence of endangering post-birth conduct. We reject the party's invitation to become enmeshed in the prenatal-post-birth dichotomy because the record in this case does not require that we do so. The trial court's subsection E finding is abundantly supported by evidence of post-birth conduct, and we therefore overrule Ybarra's and Dominguez's second and third points of error.

For two years after R.D.'s birth, Ybarra and Dominguez were in and out of jail for probation violations; failed to attend parenting classes and Alcoholics and Narcotics Anonymous; failed to report to their respective probation officers; failed to financially support R.D.; failed to keep the Department abreast of the their whereabouts; gave false information to the trial court and the Department regarding their residence; failed to seek employment; failed to appear at court hearings; failed to visit R.D. for over six months; failed to maintain a stable home environment; and failed to remain drug-free. Additionally, neither attempted to learn about or understand R.D.'s special dietary requirements; her need for physical, occupational, and speech therapy; or her sensitivities to light and sound.

In short, Ybarra and Dominguez showed no concern for their daughter for two years. In fact, it was not until after their parental rights were terminated at the first trial on the merits that either even attempted to

comply with the Department's requirements. Even then, however, they evidenced only a limited understanding of the extent of R.D.'s health problems. For example, Ybarra and Dominguez planned for R.D. to share a room with her twelve-year old cousin even though they had been told repeatedly R.D. needed to sleep alone in a dark room because of her fragile sleep patterns and sensitivity to sound.

Our review of the record thus convinces us the evidence is more than sufficient to cause a rational factfinder to form "a firm belief or conviction" that, by their course of conduct over a two-year period, Ybarra's and Dominguez's conduct endangered R.D.'s physical or emotional well-being. *See In the Interest of H.C. & S.C.*, 942 S.W.2d 661, 663–64 (Tex. App.—San Antonio 1997, no writ); *Harris v. Herbers*, 838 S.W.2d 938, 942–43 (Tex.App.—Houston [1st Dist.] 1992, no writ); *Navarrette v. Texas Dep't of Human Resources*, 669 S.W.2d 849, 852 (Tex.App.—El Paso 1984, no writ); *Allred v. Harris County Child Welfare Unit*, 615 S.W.2d 803, 806 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.); *see also Bowling*, 833 S.W.2d at 732–34. Accordingly, we overrule Ybarra's and Dominguez's second and third points of error.

### Best Interest

In their fourth point of error, Ybarra and Dominguez argue the evidence is legally and factually insufficient to support the trial court's finding that terminating their parental rights is in R.D.'s best interest. Their argument under this point is based upon their not having been permitted to form parent-child relationships with R.D. because of the Department's status as managing conservator and their efforts to improve their lives. We sympathize with Ybarra's and Dominguez's loss and encourage them in their efforts to improve their lives. But the trial court's best interest finding is, as the Department argues, supported by overwhelming evidence. Accordingly, we overrule Ybarra's and Dominguez's fourth point of error. *See and compare, e.g., Rodarte v. Cox*, 828 S.W.2d 65, 75–76 (Tex.App.—Tyler 1991, writ denied); *Allred*, 615 S.W.2d at 806–07.

### CONCLUSION

In summary, there is ample evidence to support the trial court's subsection E and best interest findings, and these findings are sufficient to support the judgment of termination. Accordingly, the trial court's judgment is affirmed.