No. 04-97-00412-CV



In the Interest of S.D. and K.D.



From 198th Judicial District Court, Kerr County, Texas 


Trial Court No. 96-396-B


Honorable E. Karl Prohl, Judge Presiding



Opinion by: Catherine Stone, Justice

Dissenting Opinion by: Alma L. López, Justice


Sitting: Alma L. López, Justice

 Catherine M. Stone, Justice

 Sarah B. Duncan, Justice


Delivered and Filed: August 31, 1998


AFFIRMED


 This appeal of a decree terminating parental rights raises questions about what constitutes
a county of proper venue when the parents and children are transient with no fixed place of
residence. Because the record reveals that the parents agreed to venue in Kerr County, and because
the transfer to Kerr County was based on reasonable factors, we affirm the transfer. We also find
the evidence legally and factually sufficient to support the termination; therefore, we affirm the
decree of termination.


Factual Background

 This appeal arises from a suit terminating the parental rights of Mary Josephine Ybarra and
Rumaldo Dominguez to their daughters, S.D. and K.D. Ybarra and Dominguez have three
daughters: R.D., S.D. and K.D. R.D. was born in May 1993. At her birth, R.D. tested positive for
heroin. As a result, she was placed in a foster home. After working with R.D.'s parents for about
two years to enable them to take care of the child, the Texas Department of Protective and
Regulatory Services (the Department) asked the trial court to terminate the couple's parental rights.
The couple's parental rights were terminated in October 1995 through a proceeding in Kerr County.
That action was appealed, and affirmed in a decision by this court. See In re R.D., 955 S.W.2d 364,
367 (Tex. App.--San Antonio 1997, no writ).

 In the meantime, S.D. was born in February 1995, followed by the birth of K.D. in May
1996. At birth, K.D. tested positive for morphine. Very shortly afterwards, both S.D. and K.D. were
placed in foster care, and the Department moved to terminate the couple's parental rights in regard
to the two younger girls. The trial court terminated parental rights in January 1997. In this appeal,
Ybarra and Dominguez raise four issues challenging the trial court's decree terminating their
parental rights to S.D. and K.D..

Venue

 The Department took custody of S.D. and K.D. in San Antonio under an emergency order
from the 289th District Court in Bexar County. Shortly thereafter, the case was transferred to the
198th District Court in Kerr County, where parental rights were later terminated. In their first issue,
Ybarra and Dominguez contend that Kerr County was an improper venue, and consequently the
decree of termination must be reversed and the case remanded for a new trial in Bexar County. This
claim is without merit because the record establishes that Ybarra and Dominguez agreed to the
transfer to Kerr County.

 The law in Texas has long been that any party to a lawsuit may expressly or impliedly waive
rights conferred upon him by a venue statute. Grozier v. L-B Sprinkler & Plumbing Repair, 744
S.W.2d 306, 309 (Tex. App.--Fort Worth 1988, writ denied). The matter of venue is a personal
privilege which may be waived. See id.; Mooney Aircraft, Inc. v .Adams, 377 S.W.2d 123, 125 (Tex.
Civ. App.-- Dallas 1964, no writ). An express waiver is shown by clear overt acts evidencing an
intent to waive, while an implied waiver occurs when a party, often inadvertently, takes some action
inconsistent with his position on the venue issue and therefore is held to have waived his rights
thereon. Grozier, 744 S.W.2d at 309.

 The record supports a finding of express waiver. Nine days after the Department took
custody of the children, the initial adversarial hearing took place in the 289th District Court of Bexar
County. At the start of the hearing all persons present identified themselves on the record. Those
present included an assistant district attorney representing the Department, an attorney ad litem for
the children, several caseworkers, and the parents. The parents were not represented by counsel.
After those present identified themselves, the Department stated that it was seeking temporary
custody of the children, and made an oral request to transfer the case to Kerr County. The children's
ad litem indicated she had no objections, and the Department's attorney then conferred with the
parents on the record regarding the proposed transfer. The record reveals the following exchange:

 MR. MCCLINCHIE (the Department's attorney): Judge, actually, I haven't gotten
to confer. So let me inquire of the parents.

 Are y'all in agreement with the State taking temporary custody?


 MS. YBARRA: Yes.


 THE COURT: I need for you to speak up. I can't hear you.


 MS. YBARRA: Yes. But we're trying to see if they can be placed with a relative,
my sister.


 MR. MCCLINCHIE: And are you willing to work with the case worker in Kerrville?


 MS. YBARRA: Yes.


 MR. MCCLINCHIE: Because it will go to Kerrville, and you can ask them to study
your relatives.

 So you're asking that some relatives be studied?


 MS. YBARRA: Yes.


 * * * * * * * * * * * * * * * * * * *


 MR. MCCLINCHIE: So, otherwise, you're in agreement to take temporary custody
at this time and transfer it to Kerrville?


 MS. YBARRA: Yes.


* * * * * * * * * * * * * * * * * *


 THE COURT: I want the father to answer. Father, do you agree?


 MR. DOMINGUEZ: Yes.


Following this exchange the court received testimony from the parents and from three Child
Protective Services caseworkers. At the conclusion of the hearing, the court, "finding an agreement
of the parties," awarded temporary managing conservatorship to the Department and transferred the
case to Kerr County. Based on this record, we hold the trial court properly determined that Ybarra
and Dominguez agreed to the transfer to Kerr County.

 The venue transfer is appropriate even in the absence of an agreement by the parents. Under
the Family Code, venue in an original suit affecting the parent-child relationship is proper in the
county where the children reside unless: (1) another court has continuing jurisdiction; (2) venue is
fixed because of a divorce; (3) the suit requests an adoption; or (4) an exception as specified in
section 103.001(c) applies. See Tex. Fam. Code Ann. § 103.001 (Vernon 1996). S.D. and K.D.
were never subject to any suit affecting the parent-child relationship prior to this proceeding, so there
is no court of continuing jurisdiction. The proceeding did not involve a divorce or an adoption, and
none of the exceptions specified in Section 103.001(c) apply. As a result, venue in this case rests
in the county where S.D. and K.D. resided. Id.

 Normally, children reside where their parents reside. Id. at § 103.001(c). The Family Code,
however, does not specify the requirements for establishing a parent's residency for this type of
proceeding. Although the Family Code does not specify the requirements for residency, the Supreme
Court of Texas has articulated the elements for residency in a breach of oral contract suit under the
general civil venue statute. See Snyder v. Pitts, 241 S.W.2d 136, 140 (Tex. 1951). Under that
statute, the elements of residency are: (1) a fixed place of abode within the possession of the party;
(2) occupied or intended to be occupied consistently over a substantial period of time; (3) which is
permanent rather than temporary. See id. at 140. In meeting these requirements, Texas law is clear
that an element of permanency is necessary before a party can be considered a resident of a particular
county. See Tieuel v. Southern Pacific Trans. Co., 654 S.W.2d 771, 774 (Tex. App.--Houston [14th
Dist.] 1983, no writ). For example, in a motion to modify child custody, "permanency may be
shown either by presence in the county for an extended period of time or by some agreement, explicit
or implied, by the party with a right to control the child's residence, for the child to stay in the new
county for an extended period of time." See Martinez v. Flores, 820 S.W.2d 937, 940 (Tex.
App.--Corpus Christi 1991, no writ). Likewise in a suit for divorce, residency requires "'actual,
physical and continuous living in the county of suit by one of the parties for the time specified [by
Section 3.21 of the Family Code], coupled with a good-faith intent to make that county home.'"
Cook v. Mayfield, 886 S.W.2d 840, 842 (Tex. App.--Waco 1994, no writ) (quoting Beavers v.
Beavers, 543 S.W.2d 720, 721 (Tex. App.--Waco 1976, no writ), reh'g denied 545 S.W.2d 29). In
Mills v. Bartlett, 377 S.W.2d 636 (Tex. 1964), the court stated the following regarding "residence":

 The term 'residence' is an elastic one and is extremely difficult to define. The
meaning that must be given to it depends upon the circumstances surrounding the
person involved and largely depends upon the present intention of the individual.
Volition, intention and action are all elements to be considered in determining where
a person resides and such elements are equally pertinent in denoting the permanent
residence or domicile.


Id. at 637 (citations omitted).

 Certainly, this family had not established a permanent residence in San Antonio so that venue
was proper in Bexar County. Rather, the record establishes that the family led a nomadic life after
leaving Kerrville where their parental rights to R.D. were terminated. After R.D. was removed from
their home, the couple lived with various relatives who resided in different towns.(1) These living
arrangements were required because of their addiction to drugs and their inability to maintain steady
employment. As a result, the family was unable to obtain a home of their own after leaving
Kerrville. However, Ybarra testified that she "had [her] own place" in Kerrville. Kerr County, then,
was the last county where Ybarra and Dominguez had a "fixed place of abode" within their own
possession. See Snyder, 241 S.W.2d at 140. Under the circumstances of this case, the Kerrville
residence was a proper residence to rely upon in determining the appropriate venue. As a result, Kerr
County, the county where Kerrville is located, was a proper venue. FACTUAL SUFFICIENCY

 The parent-child relationship may be terminated involuntarily if the petitioner establishes one
or more acts or omissions enumerated in Section 161.001(1) of the Family Code and proves that
termination is in the best interests of the child. See Tex. Fam. Code Ann. § 161.001 (Vernon Supp.
1998). In this case, the Department relied on the following acts in its petition to request the
termination of parental rights: (1) that Ybarra and Dominguez "knowingly placed or knowingly
allowed the children to remain in conditions or surroundings which endangered the physical or
emotional well-being of the children," see id. § 161.001(1)(D), and (2) that Ybarra and Dominguez
"engaged in conduct or knowingly placed the children with persons who engaged in conduct which
endangered the physical or emotional well-being of the children." See id. § 161.001(1)(E). The
Department's petition further alleged that it was "in the best interest of the children" that the parental
rights be terminated.

 In their next three issues, Ybarra and Dominguez attack the factual sufficiency of the
evidence supporting the trial court's findings. To prevail on these issues, Ybarra and Dominguez
must show that the evidence is insufficient to permit a rational fact finder to hold "a firm belief or
conviction" about the truth of the finding. See In re G.M., 596 S.W.2d 846, 847 (Tex. 1980); In re
R.D., 955 S.W.2d at 367. The evidence supporting termination in this case, however, is so strong
that Ybarra and Dominguez are unable to meet this burden. Because the evidence supporting the
court's findings in regard to the grounds for termination are so inextricably interrelated, our
discussion of the evidence supporting the findings is consolidated. See In re B.R., 822 S.W.2d 103,
106 (Tex. App.--Tyler 1991, writ denied) (recognizing that the parents' conduct is inherent part of
a child's conditions and surroundings).

 As for the Department's first ground for termination, Ybarra and Dominguez complain that
the only witness who testified at trial who had personally observed the physical conditions and
surroundings in which the children lived was Ybarra. Rather than testify that the children had been
endangered by their conditions and surroundings, Ybarra testified that S.D. always had food, diapers,
a place to sleep, and adequate care. In contrast, the parents argue, the Department presented no
evidence that the children's living environment was dirty, unsanitary, or unsafe. As a result, Ybarra
and Dominguez argue in their second issue that no evidence proves that they knowingly placed, or
knowingly allowed the children to remain in conditions or surroundings which endangered the
physical and emotional well-being of the children.

 As for the Department's second ground for termination, Ybarra and Dominguez complain
that the only evidence supporting the termination of parental rights in regard to K.D. is her prenatal
exposure to heroin. In light of the brief time in which K.D. was in her parents care -- eighteen days
-- Ybarra and Dominguez argue that prenatal drug use alone is insufficient to find that they engaged
in conduct, or knowingly placed the children with persons who engaged in conduct, which
endangered the physical or emotional well-being of the child. They further argue that no evidence
exists to support this finding in respect to S.D. According to Ybarra and Dominguez, no evidence
was presented that S.D. was exposed to drugs prenatally or that she was endangered in any other way
by her parents' conduct. Because of these contentions, they maintain in their third issue that no
evidence supports the trial court's finding that they engaged in conduct or knowingly placed their
children with persons who engaged in conduct which endangered the physical or emotional well-being of the children. Although K.D.'s prenatal exposure to drugs alone may be insufficient to
support the trial court's findings, other evidence supports the trial court's findings regarding the
environment and conduct that endangered the physical and emotional well-being of S.D. and K.D.

 Elizabeth McPherson, Ybarra's probation officer, testified that Ybarra was placed on
probation for using heroin in September 1992. Conditions of her probation required Ybarra to
submit to monthly urinalysis testing and to participate in a drug rehabilitation program. Although
she initially completed a rehabilitation program, Ybarra failed to meet many of the conditions of her
probation: she failed to report to her probation officer, refused to submit to urinalysis testing, and
failed to perform required community service. While on probation, Ybarra was arrested for
shoplifting and relapsed to using heroin, necessitating a second rehabilitation program.

 Dr. Robert Clayton, an expert in the field of prenatal substance abuse, testified about K.D.'s
special health problems. In particular, Clayton described K.D.'s reliance on one side of her body,
and how one side of her body turned red when it was exposed to heat or cold. Clayton testified that
K.D. will experience additional symptoms associated with prenatal substance abuse as she develops,
including language and learning problems. Clayton also described similar problems in S.D.
Although S.D. was not tested for drug addiction when she was born, Clayton described symptoms
that he characterized as consistent with prenatal drug exposure. Specifically, he described how he
could write his name in S.D.'s skin with his finger, which is an indication of heightened sensation
receptors caused by S.D.'s prenatal drug exposure.

 Dawn Hernandez, Dominguez's previous probation officer, testified about Dominguez's
history of criminal activity. This history included offenses for forgery by passing, shoplifting, and
driving with a suspended license. As a probationer, Dominguez failed to report, failed to perform
court-ordered community service, and failed to make required payments. According to Hernandez,
the down-load of Dominguez's electronic monitoring device indicated that Dominguez violated
curfew restrictions. Dominguez also tested positive for alcohol use, despite a probationary condition
prohibiting the consumption of alcohol, and Dominguez admitted to Hernandez that he relapsed to
using heroin when the family was in San Angelo.

 In addition to testimony about Dominguez's criminal history, Shelley Satterwhite, a case
worker with the Department, testified about the inability of the children's parents to support the
family. According to Satterwhite, who worked with the family since February 1994, Ybarra and
Dominguez had been unable to maintain a home of their own, forcing the family to live with
relatives. Satterwhite attributed this inability to provide a home to drug addiction and criminal
activity. This conduct resulted in both mother and father being jailed at various times and the
parents' separation from their children.

 Perhaps most troubling, Ybarra testified that both she and Dominguez had used heroin for
quite some time and that they used drugs together. She further testified that when Dominguez was
working they used his earnings for drugs, and that at other times, they used money that Ybarra stole
from Wal-Mart. She also acknowledged that she could have been jailed if she had been caught
stealing, which would have prevented her from taking care of her children. She also testified that
although she understood that using drugs during pregnancy could harm an unborn child, she
continued to use drugs.

 This testimony supports a conclusion that Ybarra and Dominguez knowingly placed, or
knowingly allowed the children to remain in conditions or surroundings which endangered the
physical or emotional well-being of the children, and that they engaged in conduct, or knowingly
placed the children with persons who engaged in conduct, which endangered the physical or
emotional well-being of the children. An environment which routinely subjects a child to the
probability that she will be left alone because her parents are once again jailed, whether because of
the continued violation of probationary conditions or because of a new offense growing out of a
continued use of illegal drugs, or because the parents are once again committed to a rehabilitation
program, endangers both the physical and emotional well-being of a child. Conduct that results in
such disability, and conduct that subjects a child to a life of uncertainty and instability, endangers
the physical and emotional well-being of a child.

 In addition to the findings under Section 161.001(1) of the Family Code, the trial court also
determined that termination of the parent-child relationship was in the best interests of S.D. and K.D.
See Tex. Fam. Code Ann. § 161.001(2) (Vernon Supp. 1998). In their fourth issue, Ybarra and
Dominguez argue that no evidence exists to support this finding. To prevail on this issue, Ybarra
and Dominguez must show that the evidence is insufficient to permit a rational fact finder to hold
"a firm belief" that termination is in the best interests of the children. See In re G.M., 596 S.W.2d
at 847; In re R.D., 955 S.W.2d at 367.

 Although not part of this termination proceeding, the proceeding in which Ybarra and
Dominguez lost their parental rights in respect to daughter R.D. is pertinent to determining whether
termination was in the best interests of K.D. and S.D. As a result of the prior proceeding, Ybarra and
Dominguez were aware of the effects of prenatal drug use on an unborn child and its results on
family life, yet the couple did little to correct the behavior that resulted in the termination of their
parental rights in regard to R.D. Dr. Clayton testified in detail about the special needs of K.D. and
S.D., and he and other witnesses testified about the parents' inability to meet these special needs and
to provide their children a proper home environment. Although this is a tragic situation, the best
interests of K.D. and S.D. require them to be placed in a stable environment where they can receive
proper care for their special needs. Because we firmly believe that the findings of the trial court are
true, see In re G.M., 596 S.W.2d at 847 and In re R.D., 955 S.W.2d at 367, we overrule the three
factual insufficiency issues.

 Having overruled each issue, we affirm the decree of termination.


 Catherine Stone, Justice

PUBLISH

1. As to residence, the record establishes the following:


 a. In July 1992, Ybarra was arrested in Kerrville for possession of heroin. She pled guilty and was placed on
probation for ten years. As part of her probationary conditions, Ybarra was required to report to her probation officer
monthly and to participate in a drug rehabilitation program.

 b. R.D. was born in Kerrville in May 1993, testing positive for heroin. The family lived in Kerrville for about
nine months in the family's own home. During that time, Dominguez worked as a construction worker.

 c. Sometime in 1994, Ybarra attended a rehabilitation program in Uvalde. After her release, the family lived
with relatives--first in Hondo and then in San Angelo where K.D. was born in May 1996.

 d. In December 1994, Dominguez was placed on probation in Hondo for forgery by passing. In January 1995,
he went to San Antonio. In May 1995, Dominguez met with his probation officer in Hondo and told her that he was
then living and working in San Angelo. His probation case was accordingly transferred to San Angelo to accommodate
that employment.

 e. In February 1996, Dominguez appeared in County Court in Hondo for driving with a suspended license and
was placed on probation. By April of 1996, he was failing to report in San Angelo.

 f. After K.D. was born in May 1996, the San Angelo office of Child Protective Services began the process of
offering services to the family. Without warning, the family departed San Angelo and moved in with a relative in San
Antonio. One week later, S.D. and K.D. were placed in the care of Child Protective Services. Ybarra admitted that she
left San Angelo to avoid this action.

 g. Dominguez was released from jail in Hondo the day prior to the venue hearing.



Return to
4th Court of Appeals Opinions