**In the Interest of M.S., E.S., D.S., S.S., and N.S., Minor Children.**

No. 09–01–037 CV.

Court of Appeals of Texas, Beaumont.

Submitted April 29, 2004.

Decided July 1, 2004.

Michael D. Papania, Nederland, for appellant.

Duke Hooten, Office of General Counsel, Austin, for appellees.

Before McKEITHEN, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

Shana Strickland appealed the termination of her parental relationship with her five children, M.S., E.S., D.S., S.S., and N.S. We affirmed the judgment on original submission. *In the Interest of M.S.*, 73 S.W.3d 537, 542 (Tex.App.-Beaumont 2002). The Supreme Court reversed our judgment and remanded the case with instructions to "determine whether counsel's failure to preserve the factual sufficiency issue was not objectively reasonable, and whether this error deprived Strickland of a fair trial." *In the Interest of M.S.*, 115 S.W.3d 534, 550 (Tex.2003).

■ To paraphrase the standard articulated by the Supreme Court, we must indulge in the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, including the possibility that counsel's decision not to challenge factual sufficiency was based on strategy, or even because counsel, in his professional opinion, believed the evidence factually sufficient such that a motion for new trial was not warranted. *Id.* at 549. The rebuttable presumption is that it was considered by the appellant and rejected. It is the appellant's burden to establish that counsel's performance fell below an objective standard of reasonableness. *Id.* If we determine that counsel's performance was deficient, we must determine whether there is a reasonable probability that, but for counsel's failure to preserve error, the result of the proceeding would have been different. *Id.* at 550. Such a review calls upon us to determine harm as if factual sufficiency had been preserved, under our established factual sufficiency standard in

parental-rights termination cases, understanding that the evidentiary burden in such cases is "clear and convincing." *Id.* If counsel's failure to preserve a factual sufficiency complaint was unjustified and fell below being objectively reasonable, then it must hold that counsel's failure to preserve the factual sufficiency complaint by a motion for new trial constituted ineffective assistance of counsel, and we must reverse the trial court's judgment, and remand the case for a new trial. *Id.*

■ In assessing the prejudice prong of the appellant's claim of ineffective assistance of counsel, we must determine whether, on the entire record, the jury could reasonably form a firm conviction or belief that Strickland violated one of the alleged conduct predicates of Section 161.001(1) and that the termination of her parental rights would be in the best interest of the children. *In the Interest of C.H.,* 89 S.W.3d 17, 28 (Tex.2002). If we find the evidence is factually insufficient, we must detail the evidence relevant to the issue of parental termination and clearly state why the evidence is insufficient to support a termination finding by clear and convincing evidence. *Id.* at 19. "Clear and convincing evidence" means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *Id.* at 25. The jury considered five predicate acts as grounds for termination: (1) endangerment by conditions or surroundings; (2) conduct endangerment; (3) failure to submit to a court order; (4) constructive abandonment; and (5) failure to comply with a court order. Tex. Fam.Code Ann. § 161.001(1)(D),(E),(I),(N), and (O) (Vernon 2002). Only one finding of a statutory ground is required to terminate parental rights. *See In the Interest of R.D.,* 955 S.W.2d 364, 367 (Tex.App.-San Antonio 1997, writ denied). The jury was also asked to consider the best interest of the children. Tex. Fam.Code Ann. § 161.001(2) (Vernon 2002). Neither the appellant nor the appellee isolate any of the evidence affecting any one child apart from the others, nor do they argue that the facts call for a different analysis as to any of Strickland's offspring. Therefore, we will address these elements as they relate to all five children.

■ "Endanger" means to expose to loss or injury; to jeopardize; it consists of conduct that is more than a threat of metaphysical injury or the possible ill effects of a less than ideal family environment, but the children need not suffer actual physical injury to constitute endangerment. *Texas Dep't of Human Servs. v. Boyd,* 727 S.W.2d 531, 533 (Tex.1987). Endangerment can occur through both the acts and omissions of the parent. *R.D.,* 955 S.W.2d at 367. The Texas Department of Protective and Regulatory Services [1] argues that Strickland neglected the children and failed to secure a safe environment for them. The Department's first contact with the Strickland family occurred in 1994. More referrals followed, in 1995, 1997, 1998, and 1999, before the Department obtained an order for emergency removal in June 1999. The Department maintained a goal of reunification until a few weeks before the December 2000 trial, when Strickland's failure to secure suitable living quarters and employment in the face of the impending dismissal date compelled the Department to abandon its efforts to reunite the family. At the outset of her

---

**1.** The Department has since been re-named the Texas Department of Family and Protec-tive Services.

testimony, Strickland admitted, "I neglected them in a lot of ways."

First, there was evidence of their exposure to violence. At the time of removal Strickland and her boys were living with Strickland's mother, Louetta LeBouf, and Louetta's teenaged son. At trial, Strickland admitted that her teen-aged brother had hurt her boys and that the boys were afraid of him. During her psychological evaluation, she admitted that her brother severely physically abused the children, but stated, "I don't try to stir things up" and reported that she felt if she tried to protect her children she would be asked to leave and would have no place to live. Strickland's brother broke the growth plate in E.S.'s knee, dislocated E.S.'s elbow while chasing him around the house and "hollering" at him, pulled a muscle in M.S.'s neck, and dislocated M.S.'s shoulder. LeBouf testified that she did not believe her son was a threat to the children, and characterized the injuries as "play." In her brief, Strickland argues, "[The evidence in this case] shows that boys will be boys and horseplay is a part of life." The jury, however, could reasonably discern a pattern of abuse from the evidence of frequent significant injuries.

Second, the children had to fend for themselves. A caseworker testified that the 1998 intervention occurred because the boys were riding their Big Wheels in the street unsupervised. The jury heard testimony about separate incidents in which two of the children received serious burns while performing household chores. M.S. burned his fingers while cleaning the stove unsupervised. A few weeks later, four-year-old S.S. sustained extensive burns to his chest and arm while cooking spaghetti in the microwave unsupervised. As an indication of the sort of nutrition they received, the day care operator testified that she supplied formula for N.S. in his infancy because Strickland sent him to day care with Kool–Aid in his bottles. The day care operator also testified that she felt the boys missed excessive amounts of school. When she inquired about their absence, the older boys explained that they needed to clean the house. On cross-examination, Strickland admitted that she sometimes would not wake the children up for school. The boys' hygiene was poor, and the day care operator would frequently give N.S. a bath at the day care. She would take the boys home herself at 6:30 pm, because if she did not, Strickland would leave the children at the day care until 8:00 pm.

Third, the jury heard evidence of physical, emotional, and medical neglect. S.S.'s burn was not treated by a physician, nor was a burn sustained on the following day when five-year-old D.S. was somehow burned by a light bulb. N.S. suffered from what the day care operator terms the worst diaper rash she had ever seen. He also had fungus on his genitals. Although topical medication has been prescribed for these conditions, Strickland misplaced it and failed to treat the child. In addition to being illiterate at age nine, E.S. defecated on himself. S.S. had behavior and speech problems, including an incident where he took a knife to school. Strickland admitted that she did nothing about their emotional problems.

Fourth, the jury heard evidence that Strickland failed to comply with the trial court's orders. The Department caseworker testified that their main concern was the appellant's lack of a stable income and stable housing. The Department developed a series of service plans with the goal of reuniting the family. Each service plan became part of the court orders in the case. Strickland was receiving child support for one of the children; she was ordered to pay the $200 in monthly child support to the Department, but never did

so. Ordered to find employment, Strickland obtained and lost a series of jobs, usually due to tardiness within days of employment. She was unemployed on the trial date.

The evidence indicates that Strickland failed to form mature relationships. She maintained no contact with any of the five fathers of her children, who were identified by the Department in spite of Strickland's failure to comply with the paternity testing order. The thirty-year-old appellant formed friendships with teenagers, who were often in the house and who distracted her from her own children. At the time of trial, she was sharing an apartment with an eighteen-year-old female.

Finally, the jury heard testimony about drug addiction. Strickland admitted she occasionally used drugs before the children were removed from the home, but claimed that the serious drug abuse occurred after removal. The jury could reasonably conclude, however, that Strickland abused drugs while the children were in her custody. For one, she admitted that she used drugs while the children were in the home. She also explained that she did not pick up her children at day care because she was "spending time with people I shouldn't have been, and I was doing things I shouldn't have been doing." At trial, she admitted that she and two friends spent $500 per day on cocaine. She admitted that she purchased drugs with some of the $3,000 she received in child support, even after the trial court ordered her to pay the child support to the Department.

The jury heard evidence concerning rehabilitation, too. Strickland successfully completed two levels of a drug treatment program, in January and March 2000, and reported that she had been drug-free for a year. She also attended perhaps half of the required counseling sessions and took parenting classes. Strickland admitted,

however, that she had made only one visit to the children in the four months prior to trial. She claimed she was looking into returning to college, but had not applied; that she had checked on child care, but secured none; and that she had located a house, but it did not pass inspection. In the eighteen months the children were in Department custody, Strickland failed to secure adequate housing or obtain the financial means to maintain adequate housing. Asked if she could provide for her children "right now today," the appellant replied, "Not today. But I will in a few weeks."

The evidence of violence against the children, neglect, and illegal drug use supply ample evidence to produce in the jury a firm belief or conviction as to the truth of the allegations of condition endangerment and conduct endangerment. Likewise, the jury could form a firm belief or conviction regarding the truth of the allegations of failure to submit to a court order and failure to comply with a court order from the evidence of the appellant's noncompliance regarding court-ordered paternity testing and her failure to secure stable housing and employment. Finally, a finding of constructive abandonment is supported by evidence from which the jury could form a firm belief that the children were in Department custody for more than six months, that the Department made reasonable efforts to return the children to their mother, that Strickland did not regularly visit or maintain significant contact with the children, and that she demonstrated an inability to provide the children with a safe environment.

 In addition to presenting sufficient evidence under at least one of the five pertinent termination predicates of Section 161.001(1), the termination of the parent-child relationship must also be supported by evidence to show that it is in the

best interest of the children. Tex. Fam. Code Ann. § 161.001(2) (Vernon 2002). Nonexclusive factors that the jury may consider in determining the best interest of the children include: (1) the desires of the children; (2) the emotional and physical needs of the children now and in the future; (3) the emotional and physical danger to the children now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the children; (6) the plans for the children by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams,* 544 S.W.2d 367, 371–72 (Tex.1976).

The testimony in this case reveals a pervasive pattern of instability in the appellant's life, both with personal relationships and finances. She displayed reckless disregard for the safety of her sons and consistent irresponsibility in conducting her personal life. At the time of trial she was unprepared for employment, transportation, housing, and child care. The Department provided services to the family both before and after removal. Strickland did benefit from drug treatment, but she demonstrated no appreciable improvement in her parenting skills. The children did not want to be separated from their mother, but at least two of the children have significant emotional and developmental needs that must be addressed. All five boys need domestic stability that their mother never provided. From the evidence of past conduct and present conditions, the jury could have reasonably determined that she would never provide adequate care, and that it would be in the best interest of the children to terminate Strickland's parental rights so that the Department could move forward with its plan for adoption.

The evidence in this case was factually sufficient to support the jury's verdict. As a result, we cannot conclude that there is a reasonable probability that, but for counsel's failure to preserve the factual sufficiency issue for appellate review, the result of the proceedings would have been different. In the exercise of his professional judgment, trial counsel could reasonably have decided not to challenge factual sufficiency. Therefore, Strickland was not deprived of effective assistance of counsel due to counsel's failure to preserve the sufficiency issue by filing a motion for new trial.

We overrule the issue presented in this appeal. The judgment is affirmed.

AFFIRMED.