

# IN THE
# TENTH COURT OF APPEALS

### No. 10-16-00015-CV

## IN THE INTEREST OF Z.W., A CHILD

**From the 74th District Court
McLennan County, Texas
Trial Court No. 2014-2176-3**

## MEMORANDUM OPINION

Cristina W. appeals from a judgment that terminated her parent-child relationship with Z.W.  *See* TEX. FAM. CODE ANN. § 161.001 (West 2014).  Cristina complains that the evidence was legally and factually insufficient for the jury to have found that she knowingly placed or allowed her child to remain in conditions or surroundings which endangered the child's physical or emotional well-being, failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter

262 for the abuse or neglect of the child, and that termination was in the best interest of the child. Cristina also complains that the trial court abused its discretion in the admission of evidence. Because we find that the evidence was legally and factually sufficient as to one predicate ground and that termination was in the best interest of the child, and the abuse of discretion in the admission of evidence, if any, was harmless, we affirm the judgment of the trial court.

## STANDARD OF REVIEW

In order to terminate the parent-child relationship, there must be clear and convincing evidence that the parent committed one or more of the acts specifically set forth in Family Code section 161.001(b)(1) and that termination is in the child's best interest. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1), (2), .206(a). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007. Due process demands this heightened standard because of the fundamental interests at issue. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002).

In evaluating the legal sufficiency of the evidence in a case involving termination of parental rights, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the challenged ground for termination was established. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (*citing In re J.F.C.*, 96 S.W.3d at 264-66). We review all the evidence in the light most favorable to the finding and

judgment.  *Id*.  We resolve any disputed facts in favor of the finding if a reasonable factfinder could have done so and disregard all evidence that a reasonable factfinder could have disbelieved.  *Id*.  However, we must consider undisputed evidence even if it is contrary to the finding.  *Id*.  That is, we consider evidence favorable to termination if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not.  *Id*.

In reviewing the factual sufficiency of the evidence, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.  *In re J.F.C.*, 96 S.W.3d at 266.  We are required to consider the disputed evidence and determine whether a reasonable factfinder could have resolved that evidence in favor of the finding.  *Id*.  "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient."  *Id*.

In assessing the sufficiency of the evidence under the foregoing standards, we cannot weigh witness-credibility issues that depend on the appearance and demeanor of the witnesses, for that is the factfinder's exclusive province.  Instead, we defer to the factfinder's credibility determinations as long as they are not unreasonable.  *In re J.P.B.*, 180 S.W.3d at 573-74.

In this proceeding, the jury found that Cristina had (1) knowingly placed or allowed her child to remain in conditions or surroundings which endangered the child's physical or emotional well-being and (2) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child. TEX. FAM. CODE ANN. § 161.001(1)(D) & (O). The jury also found that termination of the parent-child relationship was in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(2).

In issues one and two, Cristina complains that the evidence was legally and factually insufficient for the jury to have found by clear and convincing evidence that she knowingly placed or knowingly allowed Z.W. to remain in conditions or surroundings which endangered his physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D). In issues three and four, Cristina complains that the evidence was legally and factually insufficient for the jury to have found that she failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of Z.W., that is, that she failed to complete her service plan. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(O).

Only one ground under section 161.001(b)(1) is necessary to support a judgment in a parental-rights termination case. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Therefore, when termination is based on multiple grounds under section 161.001(b)(1), as in this proceeding, we must affirm the termination order if the evidence is sufficient to support any one of the grounds found by the trial court and the best-interest finding. *Id*.

## SECTION 161.001(b)(1)(D)

The jury found that Cristina had knowingly placed or knowingly allowed Z.W. to remain in conditions or surroundings which endangered his physical or emotional well-being. TEX. FAM. CODE ANN. § 161.001(b)(1)(D). To endanger means to expose to loss or injury, to jeopardize. *Texas Dep't Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *see also In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996). The specific danger to a child's physical or emotional well-being need not be established as an independent proposition, but it may be inferred from parental misconduct. *See Boyd*, 727 S.W.2d at 533.

When termination of parental rights is based on Subsection D of Section 161.001(b)(1), the endangerment analysis focuses on the evidence of the child's physical environment, although the environment produced by the conduct of the parents bears on the determination of whether the child's surroundings threaten his well-being. *Jordan v. Dossey*, 325 S.W.3d 700, 721 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (*citing In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Subsection D permits termination if the petitioner proves parental conduct caused a child to be

placed or to remain in an endangering environment. *In re R.D.*, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied).

It is not necessary that the parent's conduct be directed towards the child or that the child actually be injured; rather, a child is endangered when the environment creates a potential for danger which the parent is aware of but disregards. *In re S.M.L.*, 171 S.W.3d at 477. Conduct that demonstrates awareness of an endangering environment is sufficient to show endangerment. *Id.* Subsection D permits termination based upon only a single act or omission. *In re R.D.*, 955 S.W.2d at 367.

Z.W. was five years old at the time of his removal from Cristina. Cristina testified that her cell phone was not working because she had not paid the bill and she needed to make a phone call to request a medication refill for a prescription medication she was taking. Cristina's residence was on the Texas State Technical College's campus. Cristina left the residence to go to the student services building to make the phone call. Cristina testified that she believed that Z.W. was very ill and so she left him sleeping at home alone while she went to make the phone call. Cristina was gone for over an hour when a maintenance worker for TSTC entered the residence to make some repairs and discovered Z.W. home alone.

Cristina was arrested for endangering Z.W. and pled guilty to that offense during the pendency of these proceedings. Cristina was placed on deferred adjudication community supervision as a result of her plea. Cristina's judicial confession entered in

that proceeding admitted that she abandoned Z.W. "in a place under circumstances that exposed Z.W. to an unreasonable risk of harm."

We find that Cristina's conduct in leaving five-year-old Z.W. at home alone while he was sick, which she judicially admitted endangered Z.W., renders the evidence legally and factually sufficient to show that on the date of Z.W.'s removal from Cristina, Cristina knowingly allowed Z.W. to remain in surroundings which endangered his well-being. We overrule issues one and two.

Because we have found the evidence was legally and factually sufficient as to one predicate ground, we do not reach issues three and four.

### BEST INTEREST

In her fifth and sixth issues, Cristina complains that the evidence was legally and factually insufficient for the jury to have found that the termination of the parent-child relationship was in the best interest of Z.W. In determining the best interest of a child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*,

544 S.W.2d 367, 371-72 (Tex. 1976). This list is not exhaustive, but simply indicates factors that have been or could be pertinent. *Id.*

The *Holley* factors focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't Prot. & Reg. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). The goal of establishing a stable permanent home for a child is a compelling state interest. *Id*. at 87. The need for permanence is a paramount consideration for a child's present and future physical and emotional needs. *In re S.H.A.*, 728 S.W.2d 73, 92 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (en banc).

Cristina had been suffering from mental health issues including bipolar disorder, depressive disorder, anxiety disorder with panic attacks, and borderline personality disorder for many years. Cristina told the investigator that she was not taking her prescribed medications when she left Z.W. alone on the day he was removed. During the pendency of the case, there were difficulties with having a psychiatric evaluation completed due to Cristina's incarceration and a lack of approved providers in the Waco area. An evaluation was ultimately completed, although the psychiatrist had difficulty with Cristina being candid during his interview. The psychiatrist found that Cristina did not have the ability to parent a child safely and was not likely to be successful in mental health treatment because of her personality and behavior patterns. The psychiatrist did not believe that Cristina should have unsupervised contact with Z.W. and was concerned about her drastic mood swings. Although Cristina claimed to be taking her prescribed

medications, the psychiatrist was concerned that she had not been evaluated for medication for some time and it was unclear whether the prescribed doses were appropriate or needed to be adjusted.

Cristina met with four counselors during the pendency of these proceedings. Her most recent counselor testified that even if Cristina's mood disorders were treatable with medication, Cristina was still not an appropriate parent for Z.W. Cristina contended that the Department's reports were false and initially denied knowing why she had to attend counseling at all. The last counselor testified that she believed termination was in the best interest of Z.W.

During visits with Z.W., Cristina regularly violated the Department's rules regarding appropriate behavior during visits and many of the visits were terminated due to these violations. Cristina also would discuss inappropriate things with Z.W. at visits, and Z.W.'s behavior worsened after his visits with his mother. Cristina would also become loud and upset during visits which would upset Z.W. as well. After a visit, Z.W. would inform his foster parent that he did not have to comply with rules because his mother said so. After a visit where Cristina was observed whispering to Z.W. on multiple occasions, Z.W. was hospitalized for behavioral issues. On Cristina's last visit with Z.W., Cristina yelled at Z.W. which made him cry for approximately 15 minutes. Later in that visit, when Z.W. mentioned his paternal grandmother with whom he was close, Cristina grabbed Z.W. and told him that he had been lied to regarding who his father was and

that she and one other person were his only family, not his grandmother. After the visit, Z.W. threatened to burn down his foster home, threatened to kill the other children in the home, and ran away. When the police arrived, Z.W. threw rocks at them. This resulted in a second hospitalization and Z.W. had to be moved to another foster home.

Z.W. was then placed in a foster home in the Rio Grande Valley where he remained at the time of the trial. The foster parent testified that he was doing well in his placement and was doing well at school. He was participating in extracurricular activities which he enjoyed. The foster parents had discussed adopting Z.W. but had not made a decision at the time of the trial.

Z.W. had been attending therapy since his placement in the last foster home and his therapist stated that he had made great progress. At one point, Z.W.'s therapist had spoken with Cristina regarding reestablishing visitation, but based off of that conversation recommended that no contact be allowed. Z.W.'s therapist agreed that termination was in Z.W.'s best interest.

Cristina completed parenting classes and an anger management course as part of her service plan. Cristina had a stable residence and was receiving SSI disability payments on a monthly basis. Cristina blamed her difficulties on the Department and the other parties involved in the case and ultimately acknowledged before the jury that she should not have left Z.W. alone, although previously she had minimized her actions to others. Cristina contended that she only plead guilty because she was advised that she

needed to get the criminal case resolved as soon as possible. It appears from the record that Cristina made several outbursts in front of the jury during the trial as well.

Considering the *Holley* factors and the appropriate legal standards, we find that the evidence was legally and factually sufficient for the jury to have found that termination of the parent-child relationship was in the best interest of Z.W. We overrule issues five and six.

## ADMISSION OF EVIDENCE

In her seventh issue, Cristina complains that the trial court abused its discretion by admitting testimony regarding two separate incidents that occurred between Cristina and an employee of the Department and between Cristina and Z.W.'s therapist in the hallway during the trial. Cristina argues that the evidence was inadmissible pursuant to Rules 401, 403, and 404 of the Rules of Evidence.

The first incident took place in the hallway at the end of the first day of trial. The Department's employee had observed several visits between Cristina and Z.W. in the early stages of the proceeding. The employee testified that when Cristina left the courtroom, she was angry and approached the employee. The employee stated that Cristina called her a "lying bitch" and hit her in the arm as she pushed by her to go into the restroom.

Even if we assume without deciding that the trial court abused its discretion in admitting the testimony, reversal would be warranted "only if the error probably caused

the rendition of an improper judgment." *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007); *see* TEX. R. APP. P. 44.1(a)(1). "We review the entire record, and require the complaining party to demonstrate that the judgment turns on the particular evidence admitted." *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004). "Thus, if erroneously admitted or excluded evidence was crucial to a key issue, the error was likely harmful." *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 873 (Tex. 2008). This testimony was a very small portion of the record and there was substantial other evidence of Cristina's emotional outbursts both testified to by the witnesses and made directly by Cristina during the trial before the jury. We do not find that the admission of this evidence was harmful.

The second incident took place as Z.W.'s therapist was attempting to leave after her testimony. Cristina approached the therapist and confronted her about her opinion that she should not have visitation with Z.W. after their phone conversation. Cristina did not threaten the therapist but was clearly upset and angry. This confrontation was described by a Department supervisor and the security officer who ensured that the therapist was able to leave the courthouse without further incident.

Cristina objected to the testimony of the Department's supervisor but did not object to the testimony of the security officer, which were largely cumulative of each other. The erroneous admission is harmless if the evidence is merely cumulative of evidence admitted elsewhere at trial. *Nissan Motor Co.*, 145 S.W.3d at 144. "Application

of this rule requires an assessment of whether the subsequently admitted evidence is sufficiently similar to the objected-to evidence so as to render admission of the objected-to evidence harmless." *In re E.A.K.*, 192 S.W.3d 133, 148 (Tex. App.—Houston [14th Dist.] 2006, pet. denied.). We overrule issue seven.

## CONCLUSION

Having found no reversible error, we affirm the judgment of the trial court.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
Justice Davis, and
Justice Scoggins
Affirmed
Opinion delivered and filed July 13, 2016
[CV06]

