NO. 07-11-00179-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

DECEMBER 22, 2011

_____

IN THE INTEREST OF T.C.C.H.,
AND E.S.K.H., CHILDREN

_____

FROM THE 46TH DISTRICT COURT OF WILBARGER COUNTY;

NO. 25,680; HONORABLE DAN MIKE BIRD, JUDGE

_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

This appeal involves a termination of the parental rights of Johnny and Crystal to the children, T.C.C.H. and E.S.K.H.[1] The parental rights of Brandon, the biological father of T.C.C.H., as to the child T.C.C.H. were terminated in this same proceeding. However, Brandon did not appeal the judgment terminating his parental rights and is not a party to this appeal.

Crystal is the biological mother of T.C.C.H. and E.S.K.H. and, through four issues, contends that the evidence was legally and factually insufficient to allow the fact finder to find by clear and convincing evidence that 1) it was in the children's best

---

[1] Pursuant to Texas Rule of Appellate Procedure 9.8(b), the appellees will be referred to as "Johnny" and "Crystal" and the children will be referred by initials.

interest to terminate her parent child relationship; 2) she had knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being; 3) she engaged in conduct which endangered their physical or emotional well-being; and 4) she failed to abide with the conditions of the court order to obtain the return of her children. Crystal also attacks the trial court's findings that the Department of Family and Protective Services (Department) made reasonable efforts to return the children to Crystal. Finally, she contends that the trial court erred in finding it would be in the children's best interest to deny a "fictive" kin placement.

Johnny, the biological father of E.S.K.H., contends that the evidence is legally and factually insufficient to allow a fact finder to find by clear and convincing evidence that: 1) it was in the child's best interest to terminate his parental relationship with the child; 2) he had knowingly engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child; and 3) Johnny's conviction for injury to a child had become final.

Having reviewed appellants' issues, we will affirm the judgment of the trial court.

Factual and Procedural Background

On October 25, 2009, Johnny assaulted six-month-old E.K.F.H., a third child the rights to whom are not at issue in this appeal, when the child was in his care. Johnny was subsequently convicted of injury to a child and sentenced to a term of confinement of 45 years. Based upon the injuries she suffered, E.K.F.H. was taken into the Department's custody on November 13, 2009. T.C.C.H. and E.S.K.H. were placed in

the home of Doreen Lawson (Doreen) pursuant to a safety plan entered into with the Department. Doreen is described as a fictive relative.[2]

At the time of the injuries to E.K.F.H., Johnny was alleged to have been smoking marijuana. The day after the injuries to E.K.F.H., Crystal was tested for drugs, and the test came back positive for marijuana. At the time of the injuries, Crystal first denied knowing anything about Johnny using marijuana or the presence in the home of drug paraphernalia. Subsequently, Crystal changed her story about the use of marijuana in the home. The use of drugs became a central theme in the Department's presentation of evidence. The decision to leave E.K.F.H. with Johnny on the day of the injuries was Crystal's. At trial, Crystal admitted knowing that Johnny had a bad temper and that this trait was exacerbated by the use of marijuana.

After placement of the two children, T.C.C.H. and E.S.K.H., at Doreen's home, they were removed upon Doreen's request. Doreen advised the Department that she would be unable to care for the two children at that time due to the illnesses of her father and her former husband. After removal from Doreen's home, the children were placed in the home of Johnny's aunt, Anna, in December 2009. Again, the children did not stay long in this placement, as Anna asked the Department to remove the children in December. After removal of the children from Anna's home, they were subsequently placed in a foster home, where they resided at the time of trial.

---

[2] As used by the parties, we conclude that fictive relative means someone not related by blood or marriage but extremely close to the parent involved.

The Department alleged that Crystal's parental rights should be terminated to both children based upon allegations that Crystal had:

1) knowingly placed or allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children;  See TEX. FAM. CODE ANN. § 161.001(1)(D) (West Supp. 2011).[3]

2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children; See § 161.001(1)(E).

3) constructively abandoned the children who have been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services or an authorized agency for not less than six months and: (1) the Department or authorized agency has made reasonable efforts to return the children to the mother; (2) the mother has not regularly visited or maintained significant contact with the children; and (3) the mother has demonstrated an inability to provide the children with a safe environment; See § 161.001(1)(N).

4) failed to comply with the provisions of a court order that specifically established the actions necessary for the mother to obtain the return of the children who have been in permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from the parent under Chapter 262 for the abuse or neglect of the children; See § 161.001(1)(O).

5) used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the children, and (1) failed to complete a court-ordered substance abuse treatment program; or (2) after completion of a court-ordered substance abuse treatment program continued to abuse a controlled substance.  See § 161.001(1)(P).

---

[3] Further reference to the Texas Family Code will be by reference to "Section ____," "section ____," or "§ ____."

4

As to Johnny, the Department made the following allegations as bases to terminate Johnny's parental rights to E.S.K.H.:

1)  knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child; See § 161.001(1)(D).

2)  engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;  See § 161.001(1)(E).

3)  been convicted or has been placed on community supervision, including deferred adjudication community supervision, for being criminally responsible for the death or serious injury of a child under the following sections of the Penal Code or adjudicated under Title 3 for conduct that caused the death or serious injury of a child that would constitute a violation of one of the following Penal Code sections:

    § 22.04 (injury to a child, elderly individual, or disabled individual);  See § 161.001(1)(L).

4)  knowingly engaged in criminal conduct that has resulted in the father's conviction of an offense and confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition.  See § 161.001(1)(Q).

At trial, the Department produced evidence that Crystal and Johnny were both using marijuana before the children were removed from the home and that Johnny was thought by Crystal to have used marijuana on the day of the injury to the youngest child. Further, Crystal thought the use of marijuana made Johnny act belligerently.  So, Crystal knew of Johnny's marijuana use, yet she left him in charge of the children. Additionally, Crystal had three positive drug tests after the children were removed from the home, including one for marijuana on the day of the removal.

5

In addition to the use of marijuana, during the pendency of the Department's case, Crystal tested positive for amphetamines and methamphetamines. Crystal testified at length about her drug usage. In fact, Crystal's drug usage is part of her appeal wherein she contends that the Department failed to prove that it made reasonable efforts to return the children to Crystal. See § 161.001(1)(N). Specifically, Crystal contends that the Department did not provide her with any drug rehab services.

Crystal's lack of a stable home became an issue during the pendency of this case. The record reflects that, after the children were placed in the Department's care, Crystal lived in her home for about a month and then moved to Wichita Falls for about six months. While in Wichita Falls, Crystal lived with a man named Cecil and had no contact with the Department for a period of time. She was arrested when the police conducted a drug raid on Cecil's house. After being released from jail, Crystal continued to live in Cecil's house for another month. At some point after the arrest in Wichita Falls, Crystal moved to Brookshire, Texas. Crystal contends she tried to establish services with the Department in Brookshire; however, after being there for some period of time Crystal moved back to Wichita Falls.

Upon returning to Wichita Falls, the record establishes that Crystal was arrested during a drug raid at the apartment of a friend she was visiting. The record demonstrates that Crystal was held in jail from July 28, 2010, until February 11, 2011, when the charges were dismissed against her. During her incarceration, Crystal contends that she did all she could to comply with the requirements of the Department. Crystal testified that she requested services and complied with all the information that

6

was furnished her by the Department. After her release from custody, Crystal moved in with her parents in Frederick, Oklahoma. This is where Crystal was residing at the time of trial.

Crystal submitted Doreen's name as a possible placement for the Department to consider, if the Department was not going to agree to return the children to her. The record reflects that the Department did not do a home study on Doreen's home. According to the record, this was because the Department had great concern regarding a history of family violence that Doreen's son, Terry, has. During the final hearing, Doreen testified and admitted that Terry did in fact live with her at that time. Testimony was developed that Doreen had never requested that the children be placed back in her home after the original placement and voluntary removal.

The Department presented evidence from the case worker, Deborah Vis. Vis testified that Crystal was ordered to participate in drug assessment and that based on the assessment, it was recommended to Crystal that she attend daily AA or NA[4] meetings, random drug tests, and substance abuse education. The substance abuse education was set up through the services of Sue Davis. Crystal did not complete the substance abuse counseling and completed only three out of eight hours of counseling. Crystal did not attend any AA or NA sessions.

Vis testified at length about the difficulty the Department had in extending services to Crystal due to her nearly constant movement. According to Vis, this was one of the primary reasons that no additional services pertaining to drug use could be

---

[4] AA is Alcoholics Anonymous, and NA is Narcotics Anonymous.

offered. As to the other services offered and required by the Department's plan for reunification, Crystal failed to complete the parenting classes and did not complete all of the counseling sessions set up in connection with her drug dependency issues.

During the time the Department had conservatorship and custody of the children, the record reflects that Crystal was inconsistent in her efforts to visit with the children. There were periods of time, according to Vis, when Crystal did not visit with the children for several weeks or months at a time.

After hearing the evidence and argument of counsel, the trial court terminated the parental rights of Johnny to E.S.K.H. and Crystal's parental rights to both T.C.C.H.[5] and E.S.K.H. After entering a final judgment terminating the parental rights as set out above, the trial court entered findings of fact and conclusions of law. Additionally, the trial court entered findings that an appeal of this matter by both Crystal and Johnny was not frivolous. Accordingly, both have appealed. Both contest the sufficiency of the evidence as to the grounds relied upon by the trial court to terminate their respective parental rights. Further, both contest the sufficiency of the evidence to prove that termination of their respective parental rights is in the best interest of the respective child or children. Finally, Crystal contends that the trial court erred in finding that the Department made reasonable efforts to return the child. We disagree with Johnny's and Crystal's contentions and will affirm the judgment of the trial court.

---

[5] The trial court also terminated the rights of T.C.C.H.'s father, Brandon. Again, Brandon has not appealed the judgment of termination.

## Standard of Review

The natural right existing between parents and their children is of constitutional dimension. See Santosky v. Kramer, 455 U.S. 745, 758-59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). See also Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, termination proceedings are strictly scrutinized. In re of G.M., 596 S.W.2d 846 (Tex. 1980). Parental rights, however, are not absolute, and it is essential that the emotional and physical interests of a child not be sacrificed merely to preserve those rights. In re C.H., 89 S.W.3d 17, 26 (Tex. 2002).

A termination decree is complete, final, irrevocable, and divests for all time that natural right, as well as all legal rights, privileges, duties, and powers with respect to each other except for the child's right to inherit. Holick, 685 S.W.2d at 20. Thus, due process requires application of the clear and convincing standard of proof in cases involving involuntary termination of parental rights. In re J.F.C., 96 S.W.3d 256, 263 (Tex. 2002). Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. See § 101.007; see also In re C.H., 89 S.W.3d at 25-26.

The Family Code permits a court to order termination of parental rights if the petitioner establishes one or more acts or omissions enumerated under subsection (1) of the statute and also proves that termination of the parent-child relationship is in the best interest of the child. See § 161.001; Holley v. Adams, 544 S.W.2d 367, 370 (Tex. 1976). Though the same evidence may be probative of both issues, both elements

9

must be established and proof of one element does not relieve the petitioner of the burden of proving the other.  See In re C.H., 89 S.W.3d at 28; Holley, 544 S.W.2d at 370.

In a legal sufficiency review of the evidence to support an order terminating parental rights, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction as to the truth of the allegations sought to be established.  § 101.007 (West 2008); In re J.F.C., 96 S.W.3d at 266.  To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so.  In re J.F.C., 96 S.W.3d at 266.  Thus, we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. Id.

The standard for reviewing the factual sufficiency of termination findings is whether the evidence is such that a reasonable factfinder could form a firm belief or conviction about the truth of the Department's allegations.  In re C.H., 89 S.W.3d at 25-26.  Under that standard, we consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding.  In re J.F.C., 96 S.W.3d at 266.  If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so

10

significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.  Id.

Only one statutory ground is required to terminate parental rights under section 161.001.  See In re S.F., 32 S.W.3d 318, 320 (Tex.App.–San Antonio 2000, no pet.).  Therefore, we will affirm the termination order if there is both legally and factually sufficient evidence on any statutory ground upon which the trial court relied in terminating parental rights as well as the best interest finding.  Id.

Analysis

Section 161.001(1)(D) & (E)

Section 161.001(1)(D) allegations center around a parent knowingly placing or knowingly allowing the child or children to remain in conditions or surroundings which endanger the physical or emotional well-being of the child or children.  § 161.001(1)(D).  Section 161.001(1)(E) allegations center around a parent engaging in conduct or knowingly placing a child or children with persons who engage in conduct which endangers the physical or emotional well-being of the child or children.  § 161.001(1)(E).

For purposes of subsections (D) and (E), "endanger" means to expose to loss or injury, to jeopardize.  See In re M.C., 917 S.W.2d 268, 269 (Tex. 1996).  It is not necessary that the conduct be directed at the child or that the child actually suffers injury, or even that the conduct constitutes a concrete threat of injury to the child.  Id.

11

The trial court's findings were that Crystal violated subsections (D) and (E) and that Johnny violated subsection (E). § 161.001(1)(D), (E). The trial court found all allegations by clear and convincing proof. § 101.007.

Under section 161.001(1)(D), we examine the time before the removal to determine whether the environment itself posed a danger to the child's physical or emotional well-being. See In re Q.W.J., No. 07-10-0075-CV, 2011 Tex. App. LEXIS 6635, at *15 (Tex.App.—Amarillo Aug. 18, 2011, no pet.)(mem. op., not designated for publication). Although the parent's conduct is not the focus of the inquiry under subsection (D), parental conduct may produce an endangering environment. See In re D.T., 34 S.W.3d 635, 633 (Tex.App—Fort Worth 2000, pet. denied). Finally, subsection (D) permits the termination of parental rights based upon a single act or omission by the parent. In re R.D., 955 S.W.2d 364, 367 (Tex.App.—San Antonio 1997, pet. denied).

Under section 161.001(1)(E), the cause of the danger to the child must be the parent's conduct alone, as evidenced not only by the parent's actions but also by the parent's omission or failure to act. See In re Q.W.J., 2011 Tex. App. LEXIS 6635 at *20. Subsection (E) requires more than a single act or omission; rather, it requires a course of conduct by the parent. Id. The law does not require that a child be a victim of abusive conduct before the Department can involuntarily terminate a parent's rights to that child. See In re C.J.F., 134 S.W.3d 343, 352 (Tex.App.—Amarillo 2003, no pet.). If the evidence shows a course of conduct that has the effect of endangering the emotional well-being of the child, it is sufficient under subsection (E). Id.

12

Crystal

The evidence at trial showed that Crystal had a history of drug use. Further, the evidence showed that Crystal continued to use drugs after the incident which led to the removal of the children from the home. During her testimony, Crystal admitted to the use of marijuana the week prior to the children being removed in November. She further admitted to using methamphetamine as early as 2004. Crystal also testified that she began using methamphetamine in January before the removal of the children. After removal of the children from the home, Crystal tested positive for methamphetamine, amphetamines, and hydrocodone. Crystal claimed to have a prescription for the hydrocodone but was unable to give the name of the doctor who had prescribed the drug.

The record shows that Crystal knew of Johnny's use of marijuana. Further, Crystal testified that she was aware that Johnny had a temper and that the use of marijuana seemed to exacerbate his temper. In spite of this knowledge, Crystal left the children in Johnny's care. E.K.F.H. suffered her catastrophic injuries while in Johnny's care. At trial, Crystal attempted to explain this situation by claiming that she had no other option for child care. Upon cross-examination, however, Crystal admitted that she should have left Johnny and sought protection at a women's shelter.

In addition to the use of drugs and poor choice in a caregiver, Crystal has demonstrated a pattern of instability. Since the children were removed from the home, Crystal has lived in four locations in three different cities. Additionally, she has frequented places where drug use was at least suspected by the local authorities. Her

13

residence at one location led to her arrest and subsequent incarceration for a number of months.

After reviewing the record in the light most favorable to the factfinder's decision, we are of the opinion that a reasonable trier of fact could have formed a firm belief or conviction as to the truth of the allegations sought to be established and, thereby, terminated Crystal's parental rights pursuant to subsections (D) and (E). See In re J.F.C., 96 S.W.3d at 266. Accordingly, the evidence was legally sufficient. Id.

When we view this same evidence in a neutral light, we are likewise convinced that a reasonable factfinder could form a firm belief or conviction about the truth of the Department's allegations. See In re C.H., 89 S.W.3d at 25-26. In this determination, we have considered the evidence that Crystal contends is disputed in the record. However, this evidence does not cause us to alter our opinion that the evidence is factually sufficient to sustain the trial court's judgment.

Johnny

The evidence established that on October 25, 2009, Johnny had care and custody of T.C.C.H., E.S.K.H., and E.K.F.H. while Crystal was at a laundromat. During the time Johnny had care and custody of the children, E.K.F.H. suffered severe and permanent injuries. Johnny was subsequently charged and convicted of injury to a child by intentionally and knowingly causing serious bodily injury to E.K.F.H. Johnny was sentenced to serve a term of confinement for 45 years in the Institutional Division of the Texas Department of Criminal Justice. At the termination trial, the testimony revealed

that Johnny and Crystal smoked marijuana together several times. Further, Crystal testified that when Johnny smoked marijuana his bad temper became even worse.

Although an allegation of endangerment pursuant to subsection (E) normally require more than a single event or occurrence, in extreme cases, termination is warranted by conduct arising in a single event or occurrence. See In re J.A.J., 225 S.W.3d 621, 625 n.9 (Tex.App.—Houston [14th Dist.] 2006), aff'd in part, rev'd in part on other grounds, 243 S.W.3d 611 (Tex. 2007) (citing Smith v. Sims, 801 S.W.2d 247, 250 (Tex.App.—Houston [14th Dist.] 1990, no writ)). Smith involved a termination under the predecessor to subsection (E), section 15.02(1)(E), which addressed endangering the physical and emotional well-being of a child. Smith, 801 S.W.2d at 250. In the Smith case, the father had been convicted of murdering his wife, the mother of his children. Id. The court in Smith held that such a single incident was sufficient to terminate the father's rights when coupled with the father's life sentence. Id. We agree that, under our facts, the conviction of Johnny for injury to a child and subsequent sentence of 45 years confinement is a sufficient course of conduct to support a finding under subsection (E).

After reviewing the record in the light most favorable to the factfinder's decision, we are of the opinion that a reasonable trier of fact could have formed a firm belief or conviction as to the truth of the allegations sought to be established and thereby terminated Johnny's parental rights pursuant to subsection (E). See In re J.F.C., 96 S.W.3d at 266. Accordingly, the evidence was legally sufficient. Id.

15

When we view this same evidence in a neutral light, we are likewise convinced that a reasonable factfinder could form a firm belief or conviction about the truth of the Department's allegations. See In re C.H., 89 S.W.3d at 25-26. Accordingly, we find the evidence factually sufficient to support the trial court's judgment. Even though only one statutory ground is required to terminate parental rights under section 161.001, we will review the trial court's finding about Johnny's conviction for injury to a child. See In re S.F., 32 S.W.3d at 320.

The trial court also terminated Johnny's parental rights based upon section 161.001(1)(L), having found that Johnny had been convicted of death or serious bodily injury to a child under section 22.04 of the Texas Penal Code. See § 161.001(1)(L). The record at trial revealed that Johnny was convicted of injury to a child by serious bodily injury and ordered to serve a period of confinement of 45 years in the ID-TDCJ. Johnny argues that the conviction is on appeal and, therefore, is not final. According to this argument, the trial court could not base a decision to terminate on this conviction due to the lack of finality. To support this proposition Johnny cites the Court to its own opinion in In re Castillo, 101 S.W.3d 174 (Tex.App.—Amarillo 2003, pet denied). In Castillo, the father had been convicted of murdering another child, and the direct appeal had affirmed the conviction. The father was claiming that, because he was pursuing a writ of habeas corpus that had not been decided, the conviction could not be used. In the opinion and while addressing Castillo's contention regarding appellant's continuing effort to have the conviction overturned, the Court simply said that Castillo's case had been affirmed on appeal and that was sufficient for purposes of defeating appellant's subsection (L) attack on the judgment of termination. This is significantly different than

the contention Johnny now makes, to-wit: subsection (L) requires a final judgment before the conviction can be used as a basis for termination.

This question was addressed by our sister court in Austin. See Rian v. Tex. Dep't of Family and Protective Services, No. 03-08-00155-CV, 2009 Tex. App. LEXIS 5925 at *6 (Tex.App.—Austin July 31, 2009, pet. denied). In Rian, the Austin court specifically addressed whether or not termination under subsection (L) had a finality of conviction element. Id. The Court "conclude[d] that the legislature intended to permit termination under section 161.001 based on conviction without regard to whether appeals were exhausted." Id. In Rian, the conviction at issue was being appealed, and the appellant contended that the evidence of the conviction was not admissible because the conviction was not final. Id. at *3. According to the appellant, this meant the evidence was insufficient. Id. The Austin court disagreed and found no requirement of finality for the use of a conviction to support an allegation of violation of subsection (L). Id. at *6. We find the analysis of the Rian court dispositive of Johnny's challenge and, accordingly, overrule his contention regarding the termination under the terms of subsection (L).

Best Interest

Both Crystal and Johnny contend that the Department failed to prove that termination of their respective parental rights was in the best interest of the respective children by clear and convincing evidence. The seminal case regarding the factors to be considered in determining whether termination is in the best interest of a child is Holley, 544 S.W.2d at 367. Holley enumerated nine nonexclusive factors that a court

17

may consider in making a best interest determination. Id. at 372. The Holley factors include: 1) the desires of the child, 2) the emotional and physical needs of the child now and in the future, 3) the emotional and physical danger to the child now and in the future, 4) the parenting abilities of the parties seeking custody, 5) the programs available to assist these persons, 6) the plans for the child by the parties seeking custody, 7) the stability of the home or proposed placement, 8) the acts or omissions committed by the parent which may indicate that the existing parent-child relationship is not a proper one, and 9) any excuse for the acts or omissions committed by the parent. Id. These factors are not exhaustive; some listed factors may be inapplicable to some cases, while other factors not on the list may also be considered. See In re C.H., 89 S.W.3d at 27. Evidence that proves one or more of the statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. Id. at 28.

Crystal

The record before us demonstrates that once the children were removed from the home, Crystal had no consistent contact with them. While some of her missed visits might be due to her incarceration, there were other times when she simply did not appear at the designated time. During this same period of time, Crystal did not send the children any cards or other forms of written communication. Essentially, for much of the time since removal, Crystal just disappeared from the children's lives. When Crystal visited with the children, shortly before trial, E.S.K.H. did not refer to her as mom and appeared confused by her presence. During this same period of time, the children have

18

been in a foster home and have bonded to their foster family. At the time of trial, the children had been with the foster family for fifteen months. In a case such as this, the bonding with the foster family at least implies that the child[ren]'s desires would be fulfilled by adoption by the foster family. See In re U.P., 105 S.W.3d 222, 230 (Tex.App.—Houston [14th Dist.] 2003, pet. denied).

Crystal's lack of concern when arranging for the children's caregiver in her absence led directly to E.K.F.H.'s catastrophic injuries at the hand of Johnny. The trial court found that Crystal's actions regarding the child care were violations of subsections (D) and (E). This evidence of violation of the statutory grounds may be used in determining the best interest of the children. See In re Q.W.J., 2011 Tex. App. LEXIS 6635, at *30. Accordingly, the Holley factors regarding the emotional and physical needs of the child now and in the future and the emotional and physical danger to the child now and in the future support the trial court's best interest finding.

The record reflects that Crystal did not complete the parenting skills courses that were offered by the Department. It was difficult for Crystal to finish the parenting skills requirements while she was incarcerated. However, she was given some of the work to do. Crystal testified that she finished all the work sent her. However, the Department's witness, Vis, testified that all that Crystal did was copy the articles without trying to demonstrate any substantive knowledge of what the articles related to. The trial court, as trier of fact, was fully within its rights to reject Crystal's version of the facts. In re J.F.C., 96 S.W.3d at 266. A parent's lack of motivation to improve on parenting skills, as demonstrated by the failure to complete those courses offered, is indicative that

19

termination is in the best interest of the children. See Wilson v. State, 116 S.W.3d 923, 930 (Tex.App.—Dallas 2003, no pet.)

In the final analysis, a review of this record with the Holley factors in mind leads to the conclusion that the evidence is sufficient to support the trial court's finding that termination of Crystal's parental rights were in the best interest of the children. As such, we overrule Crystal's contention to the contrary.[6]

Johnny

Regarding Johnny's contention about the sufficiency of the evidence to support the trial court's determination that termination of his parental right as to E.S.K.H. was in the child's best interest, the evidence reflected:

1) E.K.F.H. suffered catastrophic injuries while in Johnny's care;

2) Johnny was convicted of injury to a child in regard to those injuries;

3) Johnny will be incarcerated for a indeterminate period of time;

4) the child had been with the foster parents for 15 months at the time of trial;

5) the child is adjusting well to the foster parents and is thriving;

6) Johnny presented no evidence regarding his parenting skills, and

7) Johnny presented no viable alternatives for placement of the child.

---

[6] Having found that sufficient evidence supports termination based on at least one of the grounds alleged as a basis for termination, we do not reach Crystal's contention that the evidence was insufficient to support a finding that the Department made reasonable efforts to return the children to her under section 161.001(1)(N). See In re A.V., 113 S.W.3d 355, 362 (Tex. 2003).

When the record reflects the foregoing, we find that the trial court could reasonably find by clear and convincing evidence that termination of Johnny's parental rights to E.S.K.H. was in the child's best interest. See Holley, 544 S.W.2d at 372. Accordingly, we overrule Johnny's contention regarding the best interest of the child.

Termination and Change of Conservatorship

Both Crystal and Johnny further contend that the evidence is not sufficient to support the proposition that termination is in the best interest of the children/child because the evidence fails to establish that termination would result in a change of conservatorship or cause the children/child to be adopted. To support this proposition both Crystal and Johnny cite this Court to its opinion in In re J.N., 301 S.W.3d 429, 433 (Tex.App.—Amarillo 2009, pet. denied). In that case, we held that the evidence was factually insufficient to support that termination was in the best interest of the children because there was a biological father who enjoyed full parental rights, and that the Department had said it intended to try and place the child at issue with her biological father. Id. at 435. The evidence in that case further demonstrated the child was doing well in the temporary managing conservatorship of the Department while the mother exercised supervised visitation. Id. Finally, the Department could not attempt any adoption while the biological father still enjoyed his parental rights. Id. In short, the facts of J.N. were significantly different than the case now before the Court. Therefore, we do not find J.N. to control on the issue of best interest, and, therefore, Crystal and Johnny's contention that termination should be denied because termination would not change conservatorship or lead to adoption is overruled.

21

## Conclusion

Having overruled all of Crystal's and Johnny's contentions, we affirm the trial court's judgment.

Mackey K. Hancock
Justice