

# NUMBER 13-17-00272-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

## IN THE INTEREST OF Z. L. R., Z. L. R., AND Z. R., CHILDREN

On appeal from the 377th District Court
of Victoria County, Texas.

# NUMBER 13-17-00273-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

## IN THE INTEREST OF Z. J. R., A CHILD

On appeal from the 267th District Court
of Victoria County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Contreras and Hinojosa**

## Memorandum Opinion by Chief Justice Valdez

C.R., the mother, and A.L.R., the father, appeal the termination of their parental rights to their children, Z.L.R. ("Z.L.R.1"), Z.L.R. ("Z.L.R.2"), and Z.R. in appellate cause number 13-17-00272-CV.[1]  In appellate cause number 13-17-273-CV, C.R. appeals the termination of her parental rights to her child, Z.J.R.[2]  By two issues, C.R. contends that the evidence is legally insufficient to support a finding that she violated sections 161.001(b)(1)(D) and (O) of the Texas Family Code.  *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (O) (West, Westlaw through 2017 1st C.S.).  By two issues, A.L.R. contends the evidence is legally insufficient to support a finding that he violated sections 161.001(b)(1)(D) and (O) of the Texas Family Code.  *See id.* §§ 161.001(b)(1)(D), (O). We affirm.[3]

### I.    STANDARD OF REVIEW AND APPLICABLE LAW

Involuntary termination of parental rights involves fundamental constitutional rights and divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent.  *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *see In re D.S.P.*, 210 S.W.3d 776, 778 (Tex. App.—Corpus Christi 2006, no pet.).  Therefore, termination of the parent-child relationship must be supported by clear and convincing evidence.  *In re J.L.*, 163 S.W.3d

---

[1] *See* TEX. R. APP. P. 9.8(b)(2) (providing that in a parental-rights termination case, "the court must, in its opinion, use an alias to refer to a minor, and if necessary to protect the minor's identity, to the minor's parent or other family member").

[2] A.L.R. is not Z.J.R.'s father.  Z.J.R.'s father, F.J.C., signed a voluntary relinquishment of his parental rights to Z.J.R., and he is not a party to this appeal.

[3] The underlying cases in both appellate cause numbers were heard together by the trial court on April 28, 2017.  Therefore, because the record is shared by both appellate causes, we will address the issues in this consolidated memorandum opinion.

79, 84 (Tex. 2005). Before terminating the parent-child relationship, the trial court must find by clear and convincing evidence that the parent committed one of the acts prohibited by section 161.001(b)(1)(A–T) of the Texas Family Code and that termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001(b)(1)(A–T); *In re J.L.*, 163 S.W.3d at 84; *see also* TEX. FAM. CODE ANN. § 153.002 (West, Westlaw through 2017 1st C.S.).

The "clear and convincing" intermediate standard falls between the preponderance of the evidence standard of civil proceedings and the reasonable doubt standard of criminal proceedings. *Porter v. Tex. Dep't of Protective & Regulatory Servs.*, 105 S.W.3d 52, 57 (Tex. App.—Corpus Christi 2003, no pet.). It is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West, Westlaw through 2017 1st C.S.); *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002). In reviewing the legal sufficiency of the evidence supporting parental termination, we must assume that the trier of fact resolved disputed facts in favor of its finding if it was reasonable to do so. *In re J.L.*, 163 S.W.3d at 85 (citing *In re J.F.C.*, 96 S.W.3d at 266). We must also disregard all evidence that a reasonable fact-finder could have disbelieved or found to be incredible. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

Here, the trial court after a bench trial, found by clear and convincing evidence that C.R. and A.L.R., violated section 161.001 by (1) "knowingly plac[ing] or knowingly allow[ing] the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children," *see* TEX. FAM. CODE ANN. § 161.001(1)(D), and (2) failing to

> comply with the provisions of a court order that specifically established the
> actions necessary for the mother to obtain the return of the children who

have been in the permanent or temporary managing conservatorship of the [Department] for not less than nine months as a result of the children's removal from the parent[s] under Chapter 262 for the abuse or neglect of the child[ren].

See id. § 161.001(b)(1)(O).[4]

A parental-rights termination decree must be based on at least one predicate ground. See In re A.V., 113 S.W.3d 355, 362 (Tex. 2003) (affirming parental termination based on one predicate without reaching second predicate found by fact-finder and challenged by parent). If multiple predicate grounds are found by the trial court, we affirm based on any one ground because only one is necessary for termination of parental rights. In re T.N.F., 205 S.W.3d 625, 629 (Tex. App.—Waco 2006, pet. denied). Therefore, to prevail on appeal, a party must challenge the sufficiency of each affirmative finding of a predicate ground for termination or at minimum challenge the best interest finding. In re S.N., 272 S.W.3d 45, 49 (Tex. App.—Waco 2008, no pet.).

## II.    A.L.R.

In appellate cause number 13-17-00272-CV, A.L.R., contends by his second issue that the evidence is legally insufficient to show by clear and convincing evidence that the children were removed for abuse or neglect. Specifically, A.L.R. argues that "there was insufficient evidence that at the time of removal of the children[, Z.L.R.1, Z.L.R.2, and Z.R.] that [he] had abused or neglected his biological children as defined by Chapter 262 of the Family Code" and that it "was [the] acts or omissions committed by C.R." that led to the removal of the children.[5]

---

[4] The trial court also found that termination was in the children's best interest; however, neither parent challenges this finding in either cause.

[5] A.L.R. does not challenge that (1) he failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of the children or (2) the children were in the permanent or temporary managing conservatorship of the Department for not less than nine

[W]hile subsection O requires removal under chapter 262 for abuse or neglect, those words are used broadly. Consistent with chapter 262's removal standards, "abuse or neglect of the child" necessarily includes the risks or threats of the environment in which the child is placed. Part of that calculus includes the harm suffered or the danger faced by other children under the parent's care. If a parent has neglected, sexually abused, or otherwise endangered her child's physical health or safety, such that initial and continued removal are appropriate, the child has been "remov[ed] from the parent under Chapter 262 for the abuse or neglect of the child."

*In re E.C.R.*, 402 S.W.3d 239, 248 (Tex. 2013). The Texas Supreme Court has determined that abuse or neglect of a child includes the risks or threats of the environment in which the child is placed and that includes the abuse or neglect of other children in the home. *See id.* at 245–49. And, in order to determine whether the child was removed from a parent under Chapter 262 for abuse or neglect, the *E.C.R.* court indicated that appellate courts may rely on the Department's affidavit supporting initial removal and also on the trial court's unchallenged findings in the temporary orders. *See id.* at 248–49.

In an affidavit in support of emergency removal, Kelsey Gangl, a "family based worker" for the Department, testified that the Department received a report of physical neglect and neglectful supervision of Z.L.R.1, Z.L.R.2, and Z.R. by C.R., L.M. (maternal great-grandmother), A.L.R., and S.M. (maternal grandmother). Gangl stated that Z.L.R.1 (six years old) and Z.L.R.2 (four years old) were left in the care of the "elderly and disabled" L.M., who allowed the children "to run around the housing property and into the street unsupervised." The allegations against S.M and L.M. "were given a disposition of Unable to Determine." The allegations of neglectful supervision of Z.L.R.1 and Z.L.R.2 against C.R. "were found Reason to Believe." Gangl documented that "Collaterals stated that the children had almost been hit by a vehicle and have been seen playing with broken

months. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(O) (West, Westlaw through 2017 1st C.S.).

5

glass while unsupervised." She stated that "[t]he allegations of Neglectful Supervision . . . by A.L.R. were found Unable to Determine." However, A.L.R. "admitted to using marijuana within 30 days of being interviewed and it was unknown whether [A.L.R.] had supervised the children while under the influence." The allegations of physical neglect of the children by all parties including C.R. and A.L.R. were "Ruled Out." The investigation was then closed.

On August 12, 2015, the Department received a referral that C.R. had tested positive for cocaine and benzodiazepines after giving birth to Z.J.R. and that C.R. admitted to the hospital staff that she had used Xanax, without a prescription, before giving birth to Z.J.R. Gangl stated that C.R. admitted to the hospital staff that she uses marijuana and Z.J.R.'s urine tested positive for cocaine. In addition, according to Gangl, C.R. admitted to the Department's investigator, Kelli Wimberley, that she used cocaine and Xanax approximately two days prior to giving birth to Z.J.R. C.R. also admitted to Wimberley that she used marijuana a couple of months prior to Z.J.R.'s birth.

An agreed parental child safety plan was implemented for Z.J.R., who was placed with a family friend, Jessica Hicks and for Z.L.R.1, Z.L.R.2, and Z.R., who were to live with A.L.R. Department Investigator Kelly Williams testified that C.R. and A.L.R. agreed that C.R. would not have unsupervised visits with the children. Williams testified that she attempted to meet with C.R. on several occasions and that C.R. canceled the appointments or would not attend the meetings. According to Gangl's affidavit, when she visited A.L.R.'s home, she found C.R. alone with the children. The affidavit states, "On November 30, 2014 paternal grandmother [of Z.L.R.1, Z.L.R.2, and Z.R.] contacted me and stated that she is unable to care for the children any longer and that [A.L.R.] had

6

'fallen off the deep end.' She stated that [A.L.R.] admitted to current drug use and threatened that he was ready to 'give up on life.'" Gangl explained that the paternal grandmother "is unable to care for the children on her own due to her age and the toll it has taken on her health" and that the paternal grandmother "indicated that [A.L.R.] is sometimes out all night with [C.R.] leaving the children with herself or maternal grandmother, [S.M.], who has previously not [been] approved as a caregiver due to extensive past CPS history." Gangl said the paternal grandmother "stated that she has had to contact law enforcement as [C.R.] has voiced to her that she was going to scratch up her own neck and act like [A.L.R.] did it so that he would get arrested for assaulting her." Gangl stated that A.L.R. told her that "he has been using . . . cocaine on occasion, and marijuana on a daily basis" and that he refused to take a drug test.

Gangl concluded by stating that "the Department has attempted to provide services to reduce the risk in the home"; however, "[t]he parents' substance abuse hinders their ability to supervise, care for, and protect the children." Gangl explained that the "lack of protective capacities exposes their children to substantial risk or harm" and that C.R. "has been uncooperative with the Department and a Motion to Participate has been filed for court-ordered service which she has yet to complete in order to reduce the risk in the home." Gangl stated that A.L.R. has put his children at risk as he continues to use marijuana and cocaine on a regular basis although he is the primary caregiver to the children at this time. Gangl said, "The parents have been unable to provide a safe and stable environment for their children."

The evidence showed that A.L.R. had been using drugs regularly, left the children with a person who had a history with the Department and had not been approved as a

7

caregiver, allowed the children to be in C.R.'s care unsupervised, and had "go[ne] off the deep end" wanting "to give up on life."[6]  As to A.L.R.'s argument that he did not commit the acts or omissions which led to the removal of the children, in *In Interest of J.D.*, this Court stated that section 161.001(b)(1)(O)'s requirement that the child be removed due to abuse or neglect "does not require the parent who failed to comply with a court order be the same parent whose abuse warranted the child's initial removal."  No. 13-16-00062-CV, 2016 WL 3068260, at *6 (Tex. App.—Corpus Christi May 26, 2016, no pet.) (mem. op.).  We concluded that "it does not matter that [the child] was initially removed because of [the other parent's] physical abuse and not [the appellant's]" and that the appellant still failed to comply with the family service plan established by the trial court.  *Id.*  Viewing the evidence in the light most favorable to an affirmative finding under Section 161.001(b)(1)(O), we conclude that there was sufficiently clear and convincing evidence presented allowing a reasonable fact finder to form a firm belief or conviction that the children were removed due to abuse or neglect because of the risks or threats of the environment in which the children were placed.  *See E.C.R.*, 402 S.W.3d at 245–49; *see also In re K.H.*, No. 12-05-00077-CV, 2006 WL 3211299, at *5 (Tex. App.—Tyler Nov. 8, 2006, no pet.) (mem. op.) (stating that evidence was sufficient to show children were

---

[6] In *E.C.R.*, the Texas Supreme Court held that the trial court's findings that there was "sufficient evidence to satisfy a person of ordinary prudence and caution that E.C.R. faced an immediate danger to his physical health or safety, that the urgent need to protect him required his immediate removal, and that he faced a substantial risk of a continuing danger if he were returned home" were supported by an affidavit attached to the Department's petition for possession of a child.  The court stated, "This affidavit, even if not evidence for all purposes, shows what the trial court relied on in determining whether removal was justified." *In re E.C.R.*, 402 S.W.3d 239, 248 (Tex. 2013).  The court then concluded that this evidence from the affidavit and the trial court's findings established that E.C.R. was removed from the parent under chapter 262 for abuse or neglect. *Id.* at 248–49; *see also In re T.W.*, No. 13-14-00318-CV, 2014 WL 6792467, at *5 (Tex. App.—Corpus Christi Dec. 3, 2014. No pet.) (mem. op.) (relying on an affidavit attached to the Department's petition and the trial court's unchallenged findings to conclude that the evidence was sufficient to establish that the child was removed for abuse or neglect under chapter 262 of the family code).

removed due to neglect because the Department's investigator testified that the case was "initiated because of domestic violence in the home and physical neglect of both children"); *In re A.C.*, No. 12-04-00264-CV, 2005 WL 2404108, at *1 (Tex. App.—Tyler Sept. 30, 2005, no pet.) (mem. op.) (concluding that sufficient evidence supported that the child was removed due to neglect because "there was 'reason to believe' a report alleging neglectful supervision and physical neglect of both children by the parents" and the Department's specialist testified at trial that she "believed the children were endangered or at risk because of alleged drug use and the lack of appropriate housing"). We overrule A.L.R.'s second issue.[7]

## III.    C.R.

### A.    Appellate Cause Number 13-17-00272-CV

By two issues in appellate cause number 13-17-00272-CV, C.R. contends that the evidence is insufficient to support the trial court's findings that:  (1) the Department removed Z.L.R.1, Z.L.R.2, and Z.R. due to abuse or neglect and (2) she knowingly placed the children in conditions or surroundings endangering the children's physical or emotional well-being.

As set out above, there was sufficient evidence that the Department removed Z.L.R.1, Z.L.R.2, and Z.R. due to abuse or neglect based on Gangl's affidavit stating that C.R. had been unable to provide a safe and stable environment for the children and that

---

[7] Having found that one predicate ground supports the trial court's termination of A.L.R.'s parental rights to Z.L.R.1, Z.L.R.2, and Z.R., we need not address his first issue contending that the evidence is insufficient to support the trial court's finding under section 161.001(b)(1)(D) that he "knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children." *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) ("Only one predicate finding under section 161.001[(b)](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest.").

her substance abuse hindered her ability to supervise, care for, and protect the children. Accordingly, we overrule C.R.'s first issue in appellate cause number 13-17-272-CV.[8]

## B.    Appellate Cause Number 13-17-00273-CV

By two issues in appellate cause number 13-17-00273-CV, C.R. contends that the evidence is insufficient to support the trial court's findings that (1) the Department removed Z.J.R. due to abuse or neglect[9] or (2) she knowingly placed her in conditions or surroundings endangering her physical or emotional wellbeing.

"Parental and caregiver illegal drug use and drug-related criminal activity . . . supports the conclusion that the children's surroundings endanger their physical or emotional well-being." *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.) (citing *In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied) ("An environment which routinely subjects a child to the probability that she will be left alone because her parents are once again jailed, whether because of the continued violation of probationary conditions or because of a new offense growing out of a continued use of illegal drugs, or because the parents are once again committed to a rehabilitation program, endangers both the physical and emotional well-being of a child.")); *see also Vasquez v. Tex. Dep't of Protective & Regulatory Servs.*, 190 S.W.3d 189, 197 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) ("Evidence of pre-natal and

---

[8] Having found that one predicate ground supports the trial court's termination of C.R.'s parental rights to Z.L.R.1, Z.L.R.2, and Z.R., we need not address her first issue contending that the evidence is insufficient to support the trial court's finding under section 161.001(1)(D) that she "knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children." *See In re A.V.*, 113 S.W.3d at 362.

[9] C.R. does not challenge that (1) she failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children or (2) the children were in the permanent or temporary managing conservatorship of the Department for not less than nine months. *See* TEX. FAM. CODE ANN. § 161.001(1)(O) (West, Westlaw through 1st C.S.).

post-natal drug abuse by a parent may be a ground for termination.") (citing *In re R.D.*, 955 S.W.2d 364, 368 (Tex. App.—San Antonio 1997, pet. denied)). "Indeed, '[i]t is illogical to reason that inappropriate, debauching, unlawful, or unnatural conduct of persons who live in the home of a child, or with whom a child is compelled to associate on a regular basis in his home, are not inherently a part of the conditions and surroundings[ ] of that place or home.'" *In re N.K.*, 399 S.W.3d 322, 330 (Tex. App. — Amarillo 2013, no pet.); *see also In re L.V.*, No. 13-10-283-CV, 2011 WL 676020, at *5 (Tex. App.—Corpus Christi Feb. 24, 2011, no pet.) (mem. op.) (explaining that a parent's conduct in the home including illegal activity and drug use may cause an endangering environment for the children and holding that the "[a]ppellant's failure to take any action to protect his children from [the mother's] drug abuse is sufficient to establish that he knowingly allowed the children to remain in conditions or surroundings that endangered their physical well-being"); *In re H.M.A.*, No. 13-02-00286-CV, 2003 WL 22022009, at *3 (Tex. App.—Corpus Christi Aug. 28, 2003, no pet.) (mem. op.) ("Environment . . . is not limited to a physical environment such as housing or living conditions. 'Conditions or surroundings' for purposes of section (D) include also the environment produced by the conduct of parents or others.").

Here, evidence was presented that C.R. tested positive for cocaine and benzodiazepines when she gave birth to Z.J.R. The evidence shows that C.R. admitted to using cocaine two days before Z.J.R.'s birth and to using Xanax, without a prescription, two days prior to Z.J.R.'s birth. C.R. admitted she had used marijuana while she was pregnant with Z.J.R., and Z.J.R. was born with cocaine in her urine. When asked by the Department if C.R.'s use of drugs while pregnant with Z.J.R. endangered Z.J.R., Williams

11

replied, "Yes." The evidence shows that C.R. continued to use drugs after Z.J.R. was born, and she tested positive for drugs on several occasions while on her service plan.

Viewing the evidence in the light most favorable to an affirmative finding under Section 161.001(b)(1)(D), we conclude that there was sufficiently clear and convincing evidence presented allowing a reasonable fact-finder to form a firm belief or conviction that C.R. knowingly placed or knowingly allowed Z.J.R. to remain in conditions or surroundings which endangered Z.J.R.'s physical or emotional well-being. *See In re N.K.*, 399 S.W.3d at 330; *In re J.T.G.*, 121 S.W.3d at 125; *see also In re L.V.*, No. 13-10-283-CV, 2011 WL 676020, at *5. We overrule C.R.'s second issue.[10]

## IV. CONCLUSION

We affirm the trial court's judgment.

/s/ Rogelio Valdez
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
16th day of November, 2017.

---

[10] Having found that one predicate ground supports the trial court's termination of C.R.'s parental rights to Z.J.R., we need not address her first issue contending that the evidence is legally insufficient to support the trial court's finding under section 161.001(b)(1)(O) that Z.J.R. was not removed due to abuse or neglect. *See In re A.V.*, 113 S.W.3d at 362. Nonetheless, viewing the evidence in the light most favorable to an affirmative finding under Section 161.001(1)(O), we conclude that there was sufficiently clear and convincing evidence presented allowing a reasonable fact-finder to form a firm belief or conviction that Z.J.R. was removed due to abuse or neglect because of the risks or threats of the environment in which Z.J.R. was placed. *See Vasquez v. Tex. Dep't of Protective & Regulatory Servs.*, 190 S.W.3d 189, 197 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) ("Evidence of pre-natal and post-natal drug abuse by a parent may be a ground for termination.") (citing *In re R.D.*, 955 S.W.2d 364, 368 (Tex. App.—San Antonio 1997, pet. denied)). We overrule C.R.'s second issue.