

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-18-00095-CV

**IN THE INTEREST OF S.Z.**

From the 438th Judicial District Court, Bexar County, Texas
Trial Court No. 2016PA02482
Honorable Charles E. Montemayor, Associate Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:        Karen Angelini, Justice
                Marialyn Barnard, Justice
                Rebeca C. Martinez, Justice

Delivered and Filed:  June 27, 2018

AFFIRMED

Raymond Z. appeals the trial court's order terminating his parental rights to his daughter, fifteen-year-old S.Z.[1] After a bench trial, the trial court found by clear and convincing evidence that Raymond Z. had (1) knowingly placed or knowingly allowed his child to remain in conditions or surroundings that endangered her physical or emotional well-being, *see* TEX. FAM. CODE ANN. § 161.001(b)(1)(D) (West Supp. 2017); (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child, *see id.* § 161.001(b)(1)(E); (3) failed to comply with the provisions of a court order that specifically established the actions necessary for Raymond Z. to obtain the return of his child who

---

[1]To protect the privacy of the parties in this case, we identify the child by her initials and the father by his first name only. *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2017).

had been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child, *see id.* § 161.001(b)(1)(O); and (4) used a controlled substance, as defined by Chapter 481 of the Health and Safety Code, in a manner that endangered the health or safety of the child, and (a) failed to complete a court-ordered substance abuse treatment program; or (b) after completion of a court-ordered substance abuse treatment program continued to abuse a controlled substance, *see* TEX. FAM. CODE ANN. § 161.001(b)(1)(P) (West Supp. 2017). The trial court also found by clear and convincing evidence that termination of Raymond Z.'s parental rights was in the child's best interest. *See id.* § 161.001(b)(2). On appeal, Raymond Z. argues the evidence is legally and factually insufficient to support the above findings by the trial court.

## THE TRIAL

At trial, the trial court heard testimony from three Department caseworkers, S.Z.'s counselor, Raymond Z's counselors, and Raymond Z.

Ariana Jones, a Department caseworker, testified that she worked with the family from September to November 2016. She had received a referral based on allegations that Victoria M., Raymond Z.'s wife and stepmother to S.Z., had abused narcotics and methadone during her pregnancy with S.Z.'s half-brother. According to Jones, Victoria M. admitted to having used methadone during her pregnancy. After speaking to the family members, Jones offered services to them, including individual counseling for Raymond Z. and outpatient drug treatment for Victoria

M. When Raymond Z. and Victoria M. did not comply, Jones decided to remove S.Z. from the home on November 3, 2016.[2]

According to Jones, S.Z. told her that there was physical abuse in the home, describing times when Victoria M. would assault her, lock her in her bedroom at night, and accuse her of cutting Victoria M.'s hair in the middle of the night and putting roaches in Victoria M.'s shampoo. S.Z. also reported that Victoria M. and Raymond Z. took her with them to a drug dealer's house. According to Jones, S.Z. seemed upset and disturbed by the situation, and reported feeling unsafe at home. S.Z. also reported that she had witnessed domestic violence between Victoria M. and Raymond Z., including instances during which her younger brothers were also present. Jones testified that both Victoria M. and Raymond Z. had admitted to domestic violence. According to Jones, S.Z. had become "extremely parentified"—that is, when Victoria M. and Raymond Z. engaged in domestic violence, S.Z. was the one protecting her younger brothers. Jones believed it was in S.Z.'s best interest to be removed from her home.

Jones testified that with regard to the services offered, Raymond Z. and Victoria M. were minimally compliant. Raymond Z. began counseling but then asked Jones to refer him to a different counselor because he was having issues paying for the counseling. According to Jones, Raymond Z. admitted he knew about issues between S.Z. and Victoria M. and about S.Z. possibly cutting Victoria M.'s hair in the middle of the night, putting roaches in Victoria M.'s shampoo, or doing other things to upset Victoria M. Jones testified that at one point, Raymond Z. said he wanted family members to take S.Z. because she was interfering with his relationship with Victoria M.

---

[2] Three other children, who are the biological sons of Raymond Z. and Victoria M., were also removed. Raymond Z. and Victoria M.'s parental rights to these three other children were subsequently terminated. In a separate appeal, Raymond Z. is appealing the termination of his parental rights to these three other children.

According to Jones, Raymond Z. admitted he knew about Victoria M.'s drug use and knew the money he gave her went to purchase drugs, which she used while taking care of the children.

Alyssa Cordova, a Department legal worker assigned to Raymond Z., became involved in the case in November 2016 and prepared a service plan for him. Although Raymond Z. completed his services, Cordova did not feel as though he had met his goals associated with the service plan. Part of Raymond Z.'s plan required him to meet the goal of demonstrating he would be protective of S.Z. and that he understood his role in the case. According to Cordova, S.Z. still does not feel like she can trust Raymond Z. Although Raymond Z. visits with S.Z., he continues his same behaviors and continues to blame S.Z. Cordova testified that during the visits, he has shown his priorities are not on S.Z. Raymond Z. has made false promises to S.Z., and he has shown her that he still sees her as a parent during the visits—S.Z. is still the one taking care of the three younger children. However, Cordova admitted that recent visits between Raymond Z. and S.Z. had been appropriate. According to Cordova, Raymond Z. is upset with S.Z. because the goal in this case is termination of his parental rights. Cordova testified Raymond Z. is not currently in a relationship with Victoria M.

Cordova testified she does not believe Raymond Z. will adequately protect S.Z. in the future if she is returned to him. According to Cordova, S.Z. has talked about the physical abuse that occurred with Victoria M., which her father knew about but did not protect her from. According to Cordova, S.Z. has been consistent about not wanting to go back with her father. S.Z. has consistently said she does not trust him, she does not believe him, and she does not feel like he would protect her. Cordova testified that S.Z. believes that in the past, Raymond Z. has put her in a position of allowing her to be abused by someone else. Cordova testified this behavior by Raymond Z. has been harmful to S.Z.'s emotional and physical well-being.

Cordova also testified that during the pendency of the case, Raymond Z. tested positive for cocaine twice. Since April 2017, however, all drug tests have been negative. Also, during the pendency of the case, Raymond Z. has had three different girlfriends. Cordova testified that Raymond Z. has completed everything on his service plan. He has housing and is employed. But, according to Cordova, he has not met his goals, partly because S.Z. does not trust him.

Cordova testified that S.Z currently lives in a foster home, which has been a good placement for her but has no potential for permanency. According to Cordova, S.Z. is doing really well in school, and since the time she has been in the Department's care, she has made positive improvements. S.Z.'s attitude has changed, and she is no longer quick-tempered. She is working on managing her anger through therapy. Cordova testified it is in S.Z.'s best interest to be free for adoption in a stable home that is willing to allow her to maintain visitation with her siblings.

Shirelle Gibbs is the caseworker assigned to the companion termination case involving Raymond Z.'s three sons who are S.Z.'s half-brothers. Gibbs testified that in June 2017, Raymond Z. told her that he and Victoria M. had agreed that they would work their service plans, get their children back, and go back to being in a relationship. Gibbs admitted, however, that at the time of trial, she was not aware of Raymond Z. and Victoria M. being in a relationship. According to Gibbs, the fact that Raymond Z. and Victoria M. could return to a relationship concerns the Department because of the domestic violence and drug issues. Gibbs described the relationship between Raymond Z. and Victoria M. as "toxic" and testified that a home with both Raymond Z. and Victoria M. would not be a stable place for S.Z. to live.

In speaking with Victoria M., Gibbs learned that during the six-year relationship between Raymond Z. and Victoria M., they had a pattern of breaking up and then getting back together again. Gibbs testified she believed this pattern could happen again in the future.

Gibbs testified Raymond Z. did complete his service plan and does have a new apartment, which appears to be appropriate. However, when Gibbs visited the apartment, it did not appear to her that Raymond Z. was living there alone. When she asked him about it, he just chuckled and did not answer "yes" or "no."

S.Z.'s counselor, Bruce Pollack, testified that S.Z. had opened up to him about her family situation. S.Z. told him she did not like her stepmom, Victoria M. S.Z. described Victoria M. abusing her by hitting her on her leg and head. S.Z. also told Pollack that she reported the incidents to her father, but he did not do anything about them. S.Z. told Pollack she does not trust her father and she does not believe what he says. According to Pollack, S.Z. believes that if her father gets involved with a girlfriend, her father will always take the girlfriend's side. Pollack testified S.Z. is very protective of her younger siblings and reported that she feels more like a mom to them than a sister. S.Z. told Pollack she does not want to go back home and wants to be adopted. She told Pollack that although she loves her father, she does not trust him.

Pollack testified that he does not believe it would be best for S.Z. to return to her father. According to Pollack, it is always a red flag when a child says she does not want to go home. In his experience, 99% of the time children say they want to go home no matter what the situation is. Pollack testified that at one point during this case, family counseling was suggested; however, it never happened because S.Z. was not open to it. Pollack testified he could not do the family counseling himself because, as S.Z.'s individual counselor, he would have a conflict.

Raymond Z. testified that he got custody of S.Z. from her mother in 2015, and she came to live with him and Victoria M. He testified that he currently has no relationship with Victoria M., does not have a girlfriend, and does not want one. He testified he sees Victoria M. when they have visitation with the children, but otherwise has no contact with her. He admitted mentioning to Gibbs in June of 2017 that he wanted to get his children back and then reunify with Victoria M.

because he thought there was hope. But, now he knows that is not what he wants for his children. Raymond Z. claimed that he had had a change of heart and no longer plans to return to a relationship with Victoria M.

Raymond Z. testified that he wants S.Z. to come live with him and that he is willing to work on the relationship with her. About four or five months ago, he suggested family counseling to the Department, but was told the individual counselors had to agree on that. Nothing ever happened with regard to family counseling. Raymond Z. testified that when he sees S.Z., they talk about school and how she is doing. According to Raymond Z., S.Z. told him she wants to finish school at the school she is now attending. Raymond Z. testified S.Z. had said if things went well and they reunified, she would be more than happy to live with him again. According to Raymond Z., S.Z. has told him during their visits that she wants to maintain a relationship with him. Raymond Z. believed they had a strong relationship and just needed to work on the little things. He testified that if the court decided not to terminate his rights, he was willing to do whatever is required of him to work on the relationship with S.Z.

According to Raymond Z., S.Z. has told him she wants to come home but fears he will get back in a relationship with Victoria M. He keeps telling her, however, that will not happen. Raymond Z. testified that S.Z. fears his past relationship with Victoria M because S.Z. and Victoria M. did not get along, and S.Z. alleged abuse against Victoria M. Raymond Z. testified he confronted Victoria M. about the alleged abuse. According to Raymond Z., there was an occasion when he tried to stop Victoria M. from cutting S.Z.'s hair, but Victoria M. threatened him with scissors, so he called the police. The police came and talked to Victoria M., but did nothing about it.

Raymond Z. admitted to a history of domestic violence between him and Victoria M. Raymond Z. claimed the domestic violence was more verbal than anything else. Raymond Z.

claimed S.Z. had witnessed arguments, but not quarrelling, between himself and Victoria M. He admitted that S.Z. had, on more than one occasion, seen him put hands on Victoria M., but he claimed he was only restraining Victoria M. to prevent her from hitting him. Raymond Z. also admitted he knew about Victoria M.'s drug use, which occurred while she was caring for the children. He testified that at one point, he tried to get his sister and brother take S.Z. out of the home. However, they did not want to help, so S.Z. remained. When asked whether he would agree that he had not always provided safety and stability to S.Z. in the past, Raymond Z. replied, "No, I wouldn't agree with that because I have provided safety and stability for [S.Z.] always. It was just under these circumstances I did not."

Raymond Z. further testified that while Victoria M. never laid hands on their three sons, she did on S.Z. Raymond Z. testified that when S.Z. was about twelve or thirteen years old, he saw, on more than one occasion, Victoria M. spanking S.Z. on the butt. However, he testified he was not aware of the other abuse alleged by S.Z.

Raymond Z.'s counselor, David Bonnet, testified that he received the referral from the Department, but has closed the case because he feels like Raymond Z. has accomplished everything they set out to do and counseling is no longer needed. Bonnet testified that during the counseling, Raymond Z. had to work through a lot of disappointment and pain over the loss of his children. According to Bonnet, Raymond Z. had made peace with it and is ready for whatever happens.

Bonnet testified he has no reservations about Raymond Z. reunifying with his children. Raymond Z. has discussed his relationship with his ex-wife quite frequently. Bonnet admitted that the relationship was very unstable and would not be a healthy relationship to expose children to. Bonnet also admitted it was a bad judgment on Raymond Z.'s part to know of Victoria M.'s drug

use and expose S.Z. to it. Bonnet also admitted he had not met S.Z., and the only source of his information was Raymond Z.

Patrick Vargas, Raymond Z's drug counselor, testified that Raymond Z. had been successfully discharged from the drug program in January 2018. Raymond Z. had completed the Intensive Outpatient Program and was moving to supportive outpatient treatment once a week. Vargas testified Raymond Z. had tested positive for drugs in July 2017. However, his last drug test in January 2018 was negative.

At the close of the testimony, the trial court requested arguments from the attorneys. After ascertaining that the Department, S.Z.'s ad litem and the CASA volunteer were all recommending termination, the trial court took the case under advisement until after the trial of the companion case involving termination of Raymond Z.'s rights to his three sons. Then, on February 7, 2018, the trial court signed an order terminating Raymond Z.'s parental rights to S.Z.

### SUFFICIENCY OF THE EVIDENCE

Parental rights may be terminated only upon proof of clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(b)(1) of the Texas Family Code, and (2) termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2017). Here, the trial court found four grounds supporting termination of Raymond Z.'s parental rights under section 161.001(b)(1). Raymond Z. argues there is legally and factually insufficient evidence to support all four grounds.

When the legal sufficiency of the evidence is challenged, we look at all the evidence in the light most favorable to the trial court's finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). "To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to

the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* "If, after conducting its legal sufficiency review of the record evidence, a court determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient." *Id.* at 344-45.

When a parent challenges the factual sufficiency of the evidence on appeal, we look at all the evidence, including disputed or conflicting evidence. *Id.* at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* In reviewing termination findings for factual sufficiency, we give due deference to the factfinder's findings and do not supplant its judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

With regard to the trial court's finding pursuant to section 161.001(b)(1)(D), Raymond Z. argues the evidence is legally and factually insufficient that he knowingly placed or knowingly allowed his child to remain in conditions or surroundings that endangered the physical or emotional well-being of the child. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D) (West Supp. 2017). Subsection D permits termination based on a single act or omission by the parent. *In re R.D.*, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied).

The term "endanger" means "to expose to loss or injury." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re J.J.B.*, No. 04-14-00299-CV, 2014 WL 4218845, at *2 (Tex. App.—San Antonio 2014, no pet.). Although "'endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not

necessary that the conduct be directed at the child or that the child actually suffers injury." *Boyd*, 727 S.W.2d at 533; *see In re J.J.B.*, 2014 WL 4218845, at *2 (explaining that "[a]busive or violent conduct by a parent or other resident of a child's home can constitute a condition that endangers the child's physical or emotional well-being within the meaning of section 161.001(b)(1)(D)"). "Although the parent need not have certain knowledge that an actual injury is occurring, the parent must at least be aware of the potential for danger to the child in such an environment and must have disregarded that risk." *In re A.S.*, 261 S.W.3d 76, 83 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

The evidence at trial showed that, at the time of removal, fourteen-year-old S.Z. had lived with Raymond Z., Victoria M., and S.Z.'s three half-brothers for about three years. During the time S.Z. lived there, Victoria M. physically abused S.Z., including hitting her on her legs and head. Victoria M. also locked S.Z. in her room at night. Although S.Z. reported the incidents to Raymond Z., he did not protect S.Z. from the abuse. Further, S.Z., along with her three younger brothers, witnessed domestic violence between Raymond Z. and Victoria M. When the domestic violence occurred, S.Z. was the one protecting her younger brothers.

The evidence also showed that S.Z. was not only aware of Victoria M.'s illegal drug use but was taken by Raymond Z. and Victoria M. to a drug dealer's house. And, although Raymond Z. tested negative for drugs during the months leading up to trial, he nevertheless tested positive for cocaine on two occasions during the pendency of the case. And he admitted to providing Victoria M. with money to purchase drugs, which he knew she used while caring for the children.

In short, the evidence showed that Raymond Z. was aware that S.Z. was being abused in her own home, and was exposed to domestic violence and illegal drug use. However, Raymond Z. failed to take measures to protect S.Z. There was evidence this behavior by Raymond Z. was harmful to S.Z.'s emotional and physical well-being. We therefore conclude the evidence is legally

and factually sufficient to support termination of Raymond Z's parental rights on section 161.001(b)(1)(D) grounds.[3]

Raymond Z. also argues the evidence is legally and factually insufficient to support the trial court's finding that termination of his parental rights is in his child's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2) (West Supp. 2017). Under Texas law, there is a strong presumption that the best interest of a child is served by keeping the child with a parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). And, in determining whether the child's parent is willing and able to provide the child with a safe environment, a court should consider the factors set out in section 263.307 of the Family Code. *See* TEX. FAM. CODE ANN. § 263.307 (West Supp. 2017). In addition to these statutory factors, in considering the best interest of the child, a court may also consider the nonexclusive list of factors set forth by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Further, in determining whether termination of the parent-child relationship is in the best interest of a child, a court may judge a parent's future conduct by her past conduct. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

At trial, the evidence showed not only that Raymond Z. had failed to protect S.Z. from abuse, domestic violence, and drug use in the home, but the evidence further showed that S.Z. was upset and disturbed by the situation in her home and felt unsafe there. There was evidence that S.Z. does not feel like she can trust Raymond Z. to protect her and she does not believe what he says. The evidence showed S.Z. had been consistent about not wanting to go back to her father. Her counselor testified that, in his experience, it is always a red flag when a child does not want to

---

[3] Because only one ground under section 161.001(b)(1) can support the termination of parental rights and because we have determined that sufficient evidence supported the ground under section 161.001(b)(1)(D), we need not determine whether there is sufficient evidence under subsections (E), (O), or (P). *See* TEX. FAM. CODE ANN. § 161.001(b)(1) (West Supp. 2017).

return home because 99% of the time a child will say she wants to go home no matter what the situation is. And, family counseling was not offered because S.Z. was not open to it. Although Raymond Z. had completed his service plan, obtained housing, and obtained employment, the Department caseworkers were of the opinion he had not successfully met his goal of demonstrating he would protect S.Z. from future abuse. And, although family visits at the time of trial were appropriate, earlier visits between Raymond Z. and S.Z. showed he still viewed S.Z. as the parent because she was the one who had to care for the three younger children. The evidence further showed S.Z. is very protective of her younger siblings and feels more like a mother to them than a sibling.

The evidence also showed that Raymond Z. had tried, unsuccessfully, to find family members who would take S.Z. He made this attempt because S.Z. was interfering with his relationship with Victoria M. And, although Raymond Z. testified he had changed his mind about wanting to reconcile with Victoria M. and was no longer in a relationship with her, there was evidence presented that Raymond Z. and Victoria M. had in the past engaged in a pattern of behavior of breaking up and reuniting over and over again. Several witnesses expressed concern that if Raymond Z. and Victoria M. reconciled in the future, S.Z.'s emotional and physical well-being would be endangered.

Although the Department caseworkers and S.Z.'s counselor all testified that S.Z. consistently expressed that she did not want to go back home and live with Raymond Z., Raymond Z. nevertheless testified that his relationship with S.Z. is strong. He claimed S.Z. had indicated she wants to come home but fears he will renew his relationship with Victoria M. Raymond Z. said he has assured S.Z. that he will not renew the relationship. Raymond Z. claimed he would do whatever was required to work on his relationship with S.Z.

With regard to S.Z.'s current placement, she currently lives in a foster home that is a good placement for her but has no potential for permanency. She is doing well in school and has made positive improvements. She is learning to manage her anger through therapy. The Department caseworkers believe it is in S.Z.'s best interest to be free for adoption in a stable home. And S.Z. reported to her counselor that she wants to be adopted.

Considering S.Z.'s age, S.Z.'s exposure to repeated domestic violence and abuse; the pattern of behavior of Raymond Z. reuniting with the abusive step-mother; S.Z.'s mistrust of Raymond Z. to protect her from physical and emotional abuse, Raymond Z.'s failure to regain S.Z.'s trust during the pendency of this case, and S.Z.'s consistency in expressing her desire for termination of Raymond Z.'s parental rights and potential for adoption, we hold there is legally and factually sufficient evidence that termination of Raymond Z.'s parental rights is in S.Z.'s best interest.

We affirm the trial court's order terminating Raymond Z.'s parental rights.

Karen Angelini, Justice